**SEALY, INCORPORATED, a corporation, Plaintiff-Appellee,**

v.

**EASY LIVING, INC., a corporation, Defendant,**

**and**

**Danco, Inc., and Jack Ward Mattress, Inc., d/b/a Pacifica Mattress Company, Defendants-Appellants,**

Nos. 83–5892, 83–6219.

United States Court of Appeals, Ninth Circuit.

Submitted July 2, 1984.

Decided Oct. 1, 1984.

Maurice L. Muehle, Frederic F. Brace, Jr., Chicago, Ill., for defendants-appellants.

Jill S. Slater, Latham & Watkins, Los Angeles, Cal., for plaintiff-appellee.

Before GOODWIN, FARRIS and POOLE, Circuit Judges.

POOLE, Circuit Judge:

This trademark infringement action was brought by Sealy, Incorporated against Jack Ward Mattress company, d/b/a Pacifica Mattress Company ("Pacifica") and Danco, Inc.[1] Defendants counterclaimed under federal antitrust laws. Defendants appeal from the district court's dismissal of their counterclaims, entry of a permanent injunction against them, and award to plaintiff of attorney's fees. With the exception of the challenge to the award of attorney's fees, we find that none of appellant's objections require reversal.

## I. FACTS.

### A. *The Parties.*

Sealy is an association of bedding manufacturers which owns and licenses the "Sealy" trademark. Sealy, Inc. establishes standards for the manufacture of bedding products to be sold under its name.

---

1. Sealy also sued Easy Living, Inc., a bedding retailer. Easy Living settled with Sealy before trial, and is not party to this appeal.

Danco, an organization of manufacturer's representatives, advertises and sells a variety of bedding products, including those of defendant-appellant Pacifica.

Pacifica, a bedding manufacturer located in San Diego, California, is wholly-owned by Ohio-Sealy Mattress Manufacturing Co. ("Ohio-Sealy"). Ohio-Sealy itself manufactures bedding and, unlike its subsidiary Pacifica, is a Sealy licensee. In 1971, Ohio-Sealy sued Sealy, Inc. under federal antitrust laws, claiming that its licensing arrangement perpetuated practices held illegal in *United States v. Sealy*, 388 U.S. 350, 87 S.Ct. 1847, 18 L.Ed.2d 1238 (1967). The long history of dissension between Sealy, Inc. and Ohio-Sealy is recited in the antitrust counterclaim filed by Danco in this action.[2]

### B. *The present case.*

In May 1982, Danco began to offer genuine Sealy mattresses, acquired from an Ohio-Sealy subsidiary in Texas, together with non-Sealy Pacifica foundations made by Pacifica with identical fabric covering or "ticking." The foundations bore no identifying labels. The mattress and foundation combination thus gave the impression of being a matched set, and at Danco's suggestion were advertised by some retailers as a "Sealy Back-Saver and matching foundation."

Sealy, Inc. brought this suit against Danco in August 1982, seeking an injunction against sale of the mixed Sealy-Pacifica bed sets. Pacifica was joined as a defendant in October 1982.

Soon after the suit was filed, Pacifica began attaching labels to the top of each non-Sealy matching foundation identifying it as a "Quality Foundation Manufactured by Pacifica Mattress Co." The label was usually concealed, however, when the foundation was displayed in stores beneath a mattress. After Sealy moved for a preliminary injunction, Pacifica began to attach a second label to the sides of the foundation, and to distribute signs to retailers for display with the Sealy-Pacifica sets. The signs stated: "Sleep on two great names in bedding * * * Mattresses by SEALY/Foundations by PACIFICA."

The district court entered a preliminary injunction in December 1982, and in April 1983, following a non-jury trial, entered a permanent injunction prohibiting defendants from selling foundations covered with ticking similar or identical to that on Sealy products unless each foundation was labelled explicitly to disclaim any association with Sealy, and unless oral disclosure was made at the retail point-of-sale that the foundation is not of Sealy brand or manufacture.

The district court dismissed defendants' counterclaim for lack of standing.

On August 4, 1983, without a separate evidentiary hearing, the district court filed its judgment awarding plaintiffs $300,328 in attorney's fees.

## II. DISCUSSION.

### A. *Evidence of Contributory Infringement.*

Appellants argue that there was insufficient evidence of contributory infringement of Sealy's trademark. We find that substantial evidence supported the district court's finding of liability.

■ A manufacturer may be held liable for contributory trademark infringement even if it does not itself mislabel goods or deceive consumers. The Supreme Court stated in *Inwood Laboratories v. Ives Laboratories*, 456 U.S. 844, 854, 102 S.Ct. 2182, 2188, 72 L.Ed.2d 606 (1982):

**2.** Ohio-Sealy's antitrust action against Sealy, Inc. has resulted in a number of reported decisions. *Ohio-Sealy Mattress Mfg. Co. v. Duncan*, 714 F.2d 740 (7th Cir.1983), *cert. denied*, — U.S. ——, 104 S.Ct. 712, 79 L.Ed.2d 176 (1984); *Ohio-Sealy Mattress Mfg. Co. v. Kaplan*, 712 F.2d 270 (7th Cir.), *cert. denied*, — U.S. ——, 104 S.Ct. 509, 78 L.Ed.2d 698 (1983); *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 669 F.2d 490 (7th Cir.), *cert. denied*, 459 U.S. 943, 103 S.Ct. 257, 74 L.Ed.2d 201 (1982); *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 585 F.2d 821 (7th Cir.1978), *cert. denied*, 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979).

[I]f a manufacturer or distributor intentionally induces another to infringe a trademark, *or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement,* the manufacturer is contributorily responsible for any harm done as a result of the deceit.

■ The determination of contributory infringement thus turns on the defendant's intent and his knowledge of the wrongful activities of his distributors. *Compare Inwood Laboratories, supra.* (no liability for manufacturer of generic drug sold in gelatin capsules identical to plaintiffs' where defendant did not knowingly sell to infringing pharmacists) *with Warner & Co. v. Lilly & Co.*, 265 U.S. 526, 530, 44 S.Ct. 615, 617, 68 L.Ed. 1161 (1924) (contributory infringement where defendant's salesmen suggested to retailers that defendant's "Quin-Coco" could be sold as plaintiff's more expensive "Coco-Quinine"). A manufacturer may escape liability if it takes effective measures to prevent infringing uses by its distributors. Callman, *Unfair Competition, Trademarks, and Monopolies,* § 22.10 at n. 20.

■ The district court found that defendants foresaw and intended that Pacifica foundations would be passed off as Sealy products. The identical ticking and the advertisements offering the Pacifica product as a "matching foundation" for the Sealy mattress support this conclusion.

■ The district court also found that defendants' remedial measures were inadequate. This finding is not clearly erroneous. The labels attached to the foundations could not easily be seen. Even if they were noticed, neither they nor the signs belatedly distributed to retailers explicitly denied that the Pacifica foundation was a Sealy product. Even a relatively sophisticated consumer might suppose that the "matching" Pacifica foundation was made under license from Sealy, Inc. Plaintiff's witnesses testified at trial that retail salesmen made no attempt to correct their misunderstanding that the Sealy mattress and Pacifica foundation were both made by Sealy. Defendants' measures did not overcome the misleading impression conveyed by the matching fabric ticking.

B. *Exclusion of Evidence.*

■ The district court excluded deposition testimony that would have shown that Sealy had never objected to Ohio-Sealy's established east-coast practice of selling non-Sealy "polybox" foundations with matching ticking, similar to Pacifica's, together with Sealy mattresses. Appellants argue that Sealy's acquiescence in this practice demonstrates that Sealy did not consider the polybox foundation with matching ticking to be an infringing product.

The district court did not abuse its discretion by excluding this evidence. Unlike Pacifica's foundations, the east coast polybox foundations were manufactured by Ohio-Sealy, a Sealy licensee, over which Sealy might exercise some degree of supervision and control. In any event, whether Sealy, under different circumstances, objected to sale of its mattresses with non-Sealy foundations in east coast markets is ultimately irrelevant to whether Pacifica and Danco intended that Pacifica's foundations would be passed off as Sealy products.

C. *Exclusion of Tauber Testimony.*

The district court refused to allow the testimony of appellants' expert witness, Prof. Edward Tauber, because appellants had not provided Sealy with the "short narrative statement of qualifications of the expert and the testimony expected to be elicited at trial," as required by Central District of California Local Rule 9.4.6 (formerly 9.6.6).

Appellants admit their failure to comply with the rule, but argue that a lesser penalty ought to have been imposed. We disagree.

■■ The district court may, in its discretion, exclude expert witnesses not disclosed in pre-trial as required by local rules. *Wirtz v. Hooper-Holmes Bureau,*

*Inc.*, 327 F.2d 939 (5th Cir.1964). Appellants offer no justification for non-compliance with the local rule. Failure to give notice of an expert witness's testimony until immediately before his appearance at trial was clearly prejudicial to opposing counsel. The district court did not abuse its discretion in refusing to admit Tauber's testimony.

### D. *Rulings on depositions in camera.*

■ Rather than having deposition testimony read orally into the record, the district court required deposition transcripts to be submitted with marginal notations and counter-notations showing testimony to be offered and opposing counsel's objections. During the course of the trial, the deposition transcripts were returned with the courts' additional notations showing which objections had been sustained and which overruled.

Appellants object to this procedure and urge that they are entitled to oral argument on evidentiary rulings. We do not find the district court's procedure was improper.

Apart from general allegations that the procedure "impermissibly encumbered" the defense, appellants have shown no way in which their trial presentation would have differed if they had known in advance the evidentiary rulings. Moreover, except for evidence concerning east coast distribution of Ohio-Sealy polybox foundations, discussed in section II B above, appellants point to no deposition evidence that they claim was erroneously excluded.

Appellants have shown no prejudice to them from the district court's procedure. The district court's *in camera* review of written deposition testimony reduced the time required for trial, and was not an abuse of its discretion.

### E. *Did the district court's conduct prejudice appellant?*

Appellants argue that the district judge displayed hostility and bias against them. Having reviewed the entire trial transcript, we disagree.

■ The district judge showed no bias from any extrajudicial source. *United States v. Grinell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966); *United States v. Azhocar*, 581 F.2d 735 (9th Cir.1978) *cert. denied*, 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979). His questions and comments, which appellants attempt to characterize as prejudice, merely demonstrated familiarity with the trial briefs and deposition testimony. The trial judge cannot, and should not, erase from his mind all knowledge of the case before trial begins, and he need not passively refrain from interfering in the trial of matters before him.

> It is the right and duty of the Federal trial judge to facilitate, by direct participation, the orderly progress of a trial. Queries by the judge which aid in clarifying the testimony of witnesses, expedite the examination or confine it to relevant matters in order to arrive at the ultimate truth, are eminently proper so long as the authority is exercised in a non-prejudicial manner.

*Richmond v. Weiner*, 353 F.2d 41, 49 (9th Cir.1965), quoting *Ochoa v. United States*, 167 F.2d 341, 344 (9th Cir.1948). The district judge's actions were properly within his discretion. Though he made no secret of his skepticism of appellants' position, appellants were permitted to respond to the district court's expressed concerns to the best of their ability. There is no ground for reversal.

### F. *This action was not required to be a compulsory counterclaim in another case.*

■ The district court denied appellants' motion to dismiss on the ground that this case should have been filed as a compulsory counterclaim in an antitrust action brought by Pacifica and Ohio-Sealy against Sealy, Inc. in the Northern District of Illinois. We affirm the district court's decision.

A compulsory counterclaim is one arising from the "same transaction or occurrence"

as the original claim. F.R.Civ.P. 13(a). Here, the Illinois action challenges Sealy Inc.'s refusal to license Pacifica to manufacture Sealy-brand products. The present case, on the other hand, concerns the imitation-Sealy products manufactured and sold by Pacifica despite that refusal. The cases involve completely different factual and legal issues, and arise from different transactions or occurrences. *See Kuster Laboratories v. Lee,* 10 F.R.D. 350, 351 (N.D.Cal. 1950).

### G. *Dismissal of Danco's counterclaim.*

The district court dismissed a counterclaim filed by Danco alone, before Pacifica was made a defendant in the case.

Danco's counterclaim recited a long history of acts by which Sealy Inc. had allegedly attempted to restrain Ohio-Sealy and its subsidiaries, including Pacifica, from competing freely with other Sealy licensees. It claims that these acts, including the present trademark infringement action, violate federal antitrust laws.

■ The counterclaim was properly dismissed for lack of standing. The conspiracy alleged in that pleading was aimed at Ohio-Sealy and Pacifica, not Danco itself. As a sales representative for Pacifica, Danco's alleged injury is not sufficiently direct to confer antitrust standing. *See Assoc. Gen. Contractors of Cal. v. Cal. St. Council,* 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983); *Solinger v. A & M Records, Inc.,* 586 F.2d 1304, 1311–12, n. 8 (9th Cir.1978), *cert. denied* 441 U.S. 908, 99 S.Ct. 1999, 60 L.Ed.2d 377 (1979) (employee has no standing to sue for antitrust injury to employer); *Calderone Enterprises Corp. v. United Artists Theatre Circuit, Inc.,* 454 F.2d 1292, 1295 (2nd Cir.1971), *cert. denied* 406 U.S. 930, 92 S.Ct. 1776, 32 L.Ed.2d 132 (1972) (landlord lacks standing to sue for antitrust injury to his tenant). The sole action taken by Sealy Inc. directly against Danco—this lawsuit—does not form the basis for antitrust liability. *See California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972) (use of courts not a basis for antitrust liability without evidence that litigation is a sham or for purpose of harassment). *See also Coca-Cola v. Overland, Inc.,* 692 F.2d 1250, 1257 n. 17 (9th Cir.1982) (no authority for holding meritorious lawsuits to be "sham" litigation violative of antitrust laws).

### H. *Attorneys' Fees.*

Finally, appellants challenge the district court's award of $300,328 in attorneys' fees to Sealy. Since we find the record before us to be inadequate to permit review, we remand to the district court to make further findings.

■ Award of attorneys' fees is in the discretion of the district court, and we will not disturb an award unless the district court has abused its discretion. *Sapper v. Lenco Blade, Inc.,* 704 F.2d 1069 (9th Cir. 1983); *Playboy Enterprises v. Baccarat Clothing Co., Inc.,* 692 F.2d 1272 (9th Cir. 1982); *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67 (9th Cir.1975), *cert. denied* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976).

■ Under 15 U.S.C. § 1117, reasonable attorneys' fees may be awarded "in exceptional [trademark] cases." A trademark case is exceptional for purposes of an award of attorneys' fees where the infringement is malicious, fraudulent, deliberate or wilful. *Playboy Enterprises v. Baccarat Clothing Co. Inc.,* 692 F.2d 1272, 1276 (9th Cir.1982). *See* Senate Report No. 93–1400, 93rd Congress, Second Session (1974), reprinted in 1974 U.S.Code Cong. & Ad.News 7132.

■ The district court found that appellants' conduct constituted "wilful and deliberate, bad faith infringement of Sealy's trademarks that was intended to and in fact did result in deception of the public." We conclude that this finding is supported by the record in this case. There was substantial evidence tending to show that appellants manufactured and sold their look-alike foundations deliberately to deceive consumers and to take advantage of Sealy's brand identification. The district

court did not abuse its discretion in awarding attorneys' fees in this case.

■■■ The amount of the award, however, is troubling. The district court's award, $300,328, is extraordinarily high and, although a proper record might support such an award in this case, the record before us does not permit adequate review of the factors upon which the district court based its decision.[3]

■■■ The district court appears to have accepted uncritically plaintiff's representations concerning the time expended on this case, and it awarded the entire amount requested by plaintiff. Such a procedure is inadequate. Though plaintiff's counsel submitted voluminous records to show that over 2,515.5 hours had actually been spent on this case, there is no showing that the time actually spent was reasonably necessary. "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 1939–1940, 76 L.Ed.2d 40 (1983). No such effort appears to have been made here.[4]

The district court's finding that the services rendered and the hours spent by plaintiff's counsel were "reasonable and necessary" is conclusory and unsupported by any analysis of the time records actually presented in this case. Though a more detailed review of plaintiff's attorneys' fee request may support this claim, the present record does not permit adequate review.

Moreover, the district court presented no basis for its finding that the rates charged by plaintiff's counsel were reasonable. No effort appears to have been made to examine the "customary fee" prevailing in the community. *Kerr v. Screen Extras Guild,*

*Inc.,* 526 F.2d 67, 70 (9th Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). Though the fee actually charged to the client may be an important factor, "whether or not [the client] agreed to pay a fee and in what amount is not decisive. * * * The criterion for the court is not what the parties agreed but what is reasonable" *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 718 (5th Cir.1974), quoting *Clark v. American Marine Corp.,* 320 F.Supp. 709 (E.D.La. 1970), *affirmed* 437 F.2d 959 (5th Cir.1971).

We remand to the district court to permit it to conduct a more thorough and detailed inquiry concerning application to this fee request of the twelve factors listed in *Kerr,* particularly with respect to the number of hours reasonably expended by attorneys for Sealy Inc. and the prevailing fees for work of similar nature and quality in the area. We express no opinion as to the proper amount of the ultimate fee award.

## III. CONCLUSION.

The judgment of the district court granting a permanent injunction is AFFIRMED; the award of attorneys' fees is REVERSED AND REMANDED for further findings consistent with this opinion.

---

**3.** Because the district court engaged in the "regrettable practice" of adopting the findings drafted by the prevailing party wholesale, we review its findings with special scrutiny. *Cher v. Forum Intern. Ltd.,* 692 F.2d 634, 637 (9th Cir.1982), *cert. denied,* — U.S. ——, 103 S.Ct. 3089, 77 L.Ed.2d 1350 (1983).

**4.** Jill Slater, attorney for Sealy Inc., testified at her deposition that, in her view, *all* of the time spent by plaintiff's attorneys was spent usefully. The proper standard, however, is not whether the attorneys involved felt their time was usefully spent, but whether the time spent was reasonably necessary to the effective prosecution of plaintiff's federal trademark claims.