781 F.2d 733
 228 U.S.P.Q. 585
 INTERNATIONAL OLYMPIC COMMITTEE, a corporation organized and
existing under the laws of Switzerland; United States
Olympic Committee, a corporation organized and existing
under the laws of the United States of America,
Plaintiffs-Cross-Defendants-Appellees,
v.
SAN FRANCISCO ARTS & ATHLETICS, a California corporation,
and Thomas P. Waddell,
Defendants-Cross-Plaintiffs-Appellants.
 Nos. 84-1759, 84-2528.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 11, 1985.
Decided Jan. 27, 1986.
 
 Walter Allan, John Hansen, Vaughn Walker, Pillsbury, Madison, & Sutro, San Francisco, Cal., Richard Kline, Joseph Lewis, Edward T. Colbert, Beveridge, Degrandi, & Kline, Washington, D.C., for plaintiffs-cross-defendants-appellees.
 Mary C. Dunlap, San Francisco, Cal., Susan McGreivy, American Civil Liberties Union Nat. Gay/Lesbian Rights Project, Los Angeles, Cal., for defendants-cross-plaintiffs-appellants.
 Appeal from the United States District Court for the Northern District of California.
 Before GOODWIN and WALLACE, Circuit Judges, and STEPHENS, District Judge*.
 GOODWIN, Circuit Judge.
 
 
 1
 This case arises out of the San Francisco Arts and Athletics' (SFAA) use of the phrase "Gay Olympics" to describe an athletic competition it sponsored. The United States Olympic Committee (USOC) and the International Olympic Committee (IOC) brought suit under the Amateur Sports Act of 1978, codified at 36 U.S.C. Secs. 371-96 (1982), against SFAA and various individuals to restrain the use of "Olympics" to describe the event. Plaintiffs also made various related claims, which were not subsequently pressed, and are no longer in the case. The district court issued a temporary restraining order and then a preliminary injunction, which was affirmed by this court. After further proceedings in the district court, summary judgment and a permanent injunction were awarded to USOC and IOC. Defendants appealed from the judgment and injunction and an award of attorneys' fees. The appeals were consolidated and are now before us. We affirm the summary judgment and injunction, but reverse and remand the award of attorneys' fees.
 
 I. The Amateur Sports Act Claim
 A. The Act
 
 2
 The Amateur Sports Act of 1978 confers a corporate charter on USOC and gives that body certain rights in the word "Olympics" and related symbols. The act provides:
 
 
 3
 (a) Without the consent of [USOC], any person who uses for the purpose of trade, to induce the sale of any goods or services, or to promote any theatrical exhibition, athletic performance, or competition--
 
 
 4
 * * *
 
 
 5
 (4) the words "Olympic," "olympiad," "Citius Altius Fortius," or any combination or simulation thereof tending to cause confusion, to cause mistake, to deceive, or to falsely suggest a connection with [USOC] or any Olympic activity;
 
 
 6
 shall be subject to suit in a civil action by the [USOC] for the remedies provided in the Act of July 5, 1946 (60 Stat. 427; popularly known as the Trademark Act of 1946)....
 
 
 7
 36 U.S.C. Sec. 380(a)(4)(1982).
 
 
 8
 It is uncontested that SFAA used "Olympic" in the promotion of its games. This use involved not only the advertising of the games, but the selling of products with the word "Olympic" on them. Because confusion between USOC's use and SFAA's use was a disputed question of fact, the summary judgment can be sustained only if the Act does not require confusion.
 
 
 9
 SFAA argues that Sec. 380(a)(4) can only be read as requiring confusion between uses because the "tending to cause confusion" language must be applied to the whole clause. USOC argues that confusion is an element of a claim under the clause only where a simulation is used rather than the proscribed words and symbols.
 
 
 10
 The difficulty with SFAA's argument is that when Sec. 380 was adopted, it replaced a provision prohibiting the use of the protected words or any combination of them. See 36 U.S.C. Sec. 379 (1976) (amended 1978). Section 380 was intended to make the civil remedies of the Trademark Act of 1946 available to USOC and to give USOC the exclusive right to market licenses for use of the protected words and symbols. See H.R.Rep. No. 1627, 95th Cong., 2d Sess. 1978, 8-10, 15, 37, reprinted in 1978 U.S.Code Cong. & Ad.News 7478-95. See also United States Olympic Committee v. Intelicense Corp., 737 F.2d 263, 266-67 (2d Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 387, 83 L.Ed.2d 321 (1984) (false association with the USOC not required); United States Olympic Committee v. International Federation of Bodybuilders, 219 U.S.P.Q. 353, 361 (D.D.C.1982) (likelihood of confusion that goods or services stem from USOC not required). Other courts have remarked on the need to insure the market value of licenses for the use of Olympic symbols. See Stop the Olympic Prison v. United States Olympic Committee, 489 F.Supp. 1112, 1120 (S.D.N.Y.1980). In view of the pre-existing criminal sanction that prohibited nonconfusing uses and the intent to broaden USOC's protection and to ensure its power to license the symbols and words, we conclude that confusion is unnecessary.
 
 
 11
 SFAA also raises various Lanham Act defenses. When Congress adopted the Amateur Sports Act, it provided that Lanham Act remedies would be available to USOC. It omitted any provision for Lanham Act defenses. In light of the purpose of the Act, which gives the USOC more power than any ordinary trademark holder by allowing it to prohibit nonconfusing uses, and the express inclusion of Lanham Act defenses in a similar statute, see The Trademark Counterfeiting Act of 1984, Pub.L. No. 98-473, Sec. 1502(a), 98 Stat. 1837, 2178-79, codified at 18 U.S.C.A. Sec. 2320(c) & (d)(1)(B) (West.Supp.1985), we conclude Congress' omission was intentional. As a result, the Lanham Act defenses raised are irrelevant.
 
 B. Application
 
 12
 SFAA claims that even if the statute was intended to bar the use of the word "Olympics" notwithstanding a confusing effect, the application of the statute to SFAA is unconstitutional.
 
 
 13
 SFAA's first argument is based on the equal protection component of the Fifth Amendment due process clause. It argues that USOC has discriminated between homosexual groups and others in determining against whom to enforce its rights in "Olympic." It cites numerous other competitive games advertised as "Olympics" which have gone unchallenged by USOC. USOC denies discrimination and adduces other litigation by it, albeit begun after SFAA made a claim of discrimination in the instant case.
 
 
 14
 We need not resolve the difficult issue of the applicability of equal protection guarantees or determine whether USOC discriminated because we find the absence of governmental involvement in the alleged discrimination dispositive. SFAA argues that the judicial enforcement of the Olympic Committee's rights constitutes sufficient involvement, citing Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). However, in the absence of special benefit flowing to the state from the challenged action, see Burton v. Wilmington Parking Authority, 365 U.S. 715, 724, 81 S.Ct. 856, 861, 6 L.Ed.2d 45 (1961), state action will not be found unless there was a governmental decision to violate rights. Therefore, state enforcement of private rights generally will not itself meet the state action requirement. See Cobb v. Georgia Power Co., 757 F.2d 1248, 1251 (11th Cir.1985). That the United States conferred special property rights in USOC's trademarks does not make USOC's exploitation of those rights state action. Many property rights, such as ordinary trademarks and copyrights, see, e.g., Walt Disney Productions v. Air Pirates, 345 F.Supp. 108, 115-16 (N.D.Cal.1972), aff'd in relevant part, 581 F.2d 751, 758-59 (9th Cir.1978), cert. denied, 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979) or the right to exclude, see Hudgens v. NLRB, 424 U.S. 507, 512-21, 96 S.Ct. 1029, 1032-37, 47 L.Ed.2d 196 (1976), can be enforced to limit protected speech without violating the Constitution because there is no state action. While SFAA's claims that the government financed USOC and jointly marketed Olympic medals with it are more persuasive, Rendell-Baker v. Kohn, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), makes clear that neither financing nor contractual relationships by themselves suffice to make a private entity a governmental actor. Id. at 840-41, 102 S.Ct. at 2770-71.
 
 
 15
 SFAA also appears to argue that by barring nonconfusing speech, the Act violates the rights of commercial speech under the First Amendment. See Central Hudson Gas & Electric Corp. v. Public Service Commission, 447 U.S. 557, 563-64, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341 (1980). Ordinary trademark actions are based on a finding of confusion of products, and hence of misleading speech, and SFAA claims this limit is constitutionally imposed. However, the word "Olympic" and its associated symbols and slogans are essentially property. Such property rights can be protected without violating the First Amendment. See Zacchini v. Scripps-Howard Broadcasting Co., 433 U.S. 562, 573-77, 97 S.Ct. 2849, 2856-58, 53 L.Ed.2d 965 (1977) (property rights in performance of human cannonball act may properly receive priority over First Amendment rights of broadcaster), Hudgens v. NLRB, 424 U.S. 507, 518-21, 96 S.Ct. 1029, 1035-37, 47 L.Ed.2d 196 (1976) (state private property rights defeat claim to speak freely on the property of another). The Supreme Court has approved the decisions of federal trial courts upholding the exclusive right to use literary works against First Amendment challenge. See Zacchini, 433 U.S. at 576-77 & 577 n. 13, 97 S.Ct. at 2857-58 & 2858 n. 13. Because SFAA had satisfactory alternative means for expressing its opposition to the Olympics, it has no First Amendment right to use "Olympics" or the Olympic symbols to promote its games or products.
 
 C. Relief Awarded
 
 16
 The district judge granted USOC a permanent injunction against SFAA's use of the name. SFAA argues that declaratory relief or a narrower injunction would be more appropriate. It is undisputed that the SFAA resumed use of the Olympics trademark without disclosure to the Olympic Committee. While the scope of an injunction is initially left to the discretion of the trial court, see SEC v. Arthur Young & Co., 590 F.2d 785, 787 (9th Cir.1979), the court must apply the rule that injunctions are not awarded if any lesser relief will protect the trademark holder. See AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 354 (9th Cir.1979). While review of a preliminary injunction is relatively deferential, review of a permanent injunction is stricter because the parties have had a chance to present their arguments, making error easier to discern. See Sports Form, Inc. v. UPI, 686 F.2d 750, 752 (9th Cir.1982); Miss Universe, Inc. v. Flesher, 605 F.2d 1130, 1133 (9th Cir.1979). Abuse of discretion occurs if the district court rests its conclusion on clearly erroneous factual findings or if its decision relies on erroneous legal conclusions. See Sports Form, 686 F.2d at 752; Miss Universe, 607 F.2d at 1133-34. In this case the facts are undisputed and the district court correctly stated the applicable law. Furthermore, while a declaratory judgment might have sufficed, providing injunctive relief was not, given SFAA's past use of the protected words and symbols, an abuse of discretion. The injunction merely tracks the statute, and so is not overbroad.
 
 
 17
 The district court also awarded the plaintiffs attorneys' fees under the Amateur Sports Act. Violation of the Act subjects the violator "to suit in a civil action by [USOC] for the remedies provided in the Trademark Act." 36 U.S.C. Sec. 380(a) (1982). USOC contended in the district court that the reference to the Lanham Act remedies was intended as a shorthand for an earlier provision providing for an award of attorneys' fees in the court's discretion. The district court found it unnecessary to resolve the question, deciding that the defendants' actions satisfied the stricter requirement of the Lanham Act. On appeal, USOC argues that the defendants' conduct fits within the requirements of the Lanham Act. Cf. United States Olympic Committee v. Union Sport Apparel, 220 U.S.P.Q. 526, 529 (E.D.Va.1983) (using Lanham Act standards). Therefore, we must discuss the applicability of the Lanham Act to the defendants' conduct.[1]
 
 
 18
 The last sentence of 15 U.S.C. Sec. 1117 (1982) provides, "The court in exceptional circumstances may award reasonable attorney fees to the prevailing party." The "may" has been generally considered as making the award discretionary even if it fits within the statutory standard of an exceptional circumstance. See Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1014 (9th Cir.1985); Sealy, Inc. v. Easy Living, Inc., 743 F.2d 1378, 1384 (9th Cir.1984); Jellibeans, Inc. v. Skating Clubs of Georgia, Inc., 716 F.2d 833, 846-47 (11th Cir.1983).
 
 
 19
 The statute itself contains no definition of what constitutes "exceptional circumstances." The Senate Report says that exceptional circumstances include conduct that is " 'malicious', 'fraudulent', 'deliberate,' or 'wilful.' " S.Rep. No. 1400, 93d Cong., 2d Sess. 2, reprinted in 1974 U.S.Code Cong. & Ad.News 7132, 7133. This circuit has adopted this standard. See Sealy, Inc. v. Easy Living, Inc., 743 F.2d at 1384, Playboy Enterprises, v. Baccarat Clothing Co., Inc., 692 F.2d 1272, 1276 (9th Cir.1982).
 
 
 20
 The trial court awarded attorneys' fees on the theory that the SFAA intentionally used the word "Olympic" in a manner that violated the statute and knew there was a risk the statute would be violated. The court rejected SFAA's claim that the "quality of the defense" that SFAA interposed to the action was relevant to a determination of its willfulness.
 
 
 21
 We believe that the rule defining willful infringement in patent cases is instructive. Cases construing willful infringement in patent areas apply the rule that one "who reasonably doubted that the patent was valid has not willfully infringed." Lam, Inc. v. Johns-Manville Corp., 668 F.2d 462, 474 (10th Cir.), cert. denied, 456 U.S. 1007, 102 S.Ct. 2298, 73 L.Ed.2d 1302 (1982). Cf. United States Olympic Committee v. Union Sport Apparel, 220 U.S.P.Q. at 529 (attorneys' fees particularly appropriate where "expenses were caused by a recalcitrant defendant without a substantial defense"). A rule awarding fees similar to that adopted in patent cases accords with Congress' intention to eliminate the disparity in patent and trademark cases by amending the Lanham Act to provide for fees. See S.Rep. No. 1400, 93d Cong. 2d Sess. 2, reprinted in 1974 U.S.Code Cong. & Ad.News 7132, 7133. See also 35 U.S.C. Sec. 285 (1982) ("exceptional cases" test for patent cases).
 
 
 22
 Given statements in the only prior case, Stop the Olympic Prison v. United States Olympic Committee, 489 F.Supp. 1112 (S.D.N.Y.1980), SFAA might have reasonably thought that its proposed usage was not barred by the statute. Its claims of discrimination by the USOC might be found to be reasonable, considering the proliferation of other groups using the restricted words. While the USOC was not sufficiently identified with the federal government to subject the Committee to the equal protection component of Fifth Amendment due process, the argument that there was state action might not be considered insubstantial. These issues should be considered by the district court in the first instance.
 
 
 23
 Local Rule 270 of the Northern District of California requires that the parties discuss disputed issues relating to attorneys' fees and requires the movant to file declarations detailing the amount of time spent and the qualifications of counsel. SFAA argues that plaintiffs' breach of this rule bars them from claiming fees. However, SFAA's representatives refused to meet with plaintiffs for the purpose of supplying the information required by the local rule, apparently because they feared that this would compromise SFAA's position that no attorneys' fees should be awarded. Under the circumstances, we regard the district court's rulings as an implicit finding that there had been a waiver of the local rule. In light of subsequent affidavits providing further information, the district court's ruling is not clearly erroneous, and must be accepted.
 
 
 24
 We remand for further proceedings to determine whether the defendants' conduct was sufficiently exceptional under the Sealy case to make an award of attorneys' fees justifiable. Although the issue was briefed and argued, we express no opinion on the amount of the award.
 
 
 25
 The standard for allowing fees is provided by Kerr v. Screen Extra's Guild, Inc., 526 F.2d 67, 70 (9th Cir.1975), cert. denied, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). When the record does not permit adequate review because there is no showing that the time actually spent was reasonably necessary, the district court has no reviewable basis for finding that the awards were reasonable and necessary. As the Sealy court noted, "[t]hough the fee actually charged to the client may be an important factor, 'whether or not [the client] agreed to pay a fee and in what amount is not decisive.... The criterion for the court is not what the parties agreed but what is reasonable.' " 743 F.2d at 1385 (alterations and ellipsis in original; citations omitted).
 
 
 26
 On remand, the trial court should determine how much of the work was reasonably necessary. Most of the counts advanced by plaintiffs appear to have been ignored after the initial pleading. Plaintiffs' primary argument in its motion for attorneys' fees has been abandoned on appeal. If, after a Kerr and Sealy hearing, fees are to be awarded, the court should examine both the reasonableness and necessity for the rather impressive amount of time accumulated on this case.
 
 
 27
 The injunction is affirmed with costs. The fee award is vacated and remanded.
 
 
 
 *
 The Honorable Albert Lee Stephens, Jr., Senior United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 In a footnote in its brief, USOC refers to an argument that the trial court has discretion under the Amateur Sports Act to award fees without first making a finding of "exceptional circumstances." Because this case has been briefed and argued on the theory that there were (or were not) exceptional circumstances, we take the briefs as submitted and limit our review to the issues set forth in the briefs as required by Fed.R.App.P. 28(a)(2). See 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure Sec. 3974 (1977). But see International Union of Bricklayers & Allied Craftsmen Local Union No. 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1404 n. 4 (9th Cir.1985)