FILED

APR 02 2013

NOT FOR PUBLICATION

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   NV-12-1037-KiDJu |
| ) | |
| MARC E. RADOW, ) | Bk. No.   10-52176-GWZ |
| ) | |
|        Debtor. ) | Adv. No.   10-05093-GWZ |
| _____ ) | |
| ) | |
| SPIGOT RESOURCES, INC., ) | |
| ) | |
|        Appellant, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[1] |
| ) | |
| MARC E. RADOW, ) | |
| ) | |
|        Appellee. ) | |
| _____ ) | |

Argued and Submitted on January 25, 2013
at Las Vegas, Nevada

Filed - April 2, 2013

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Bruce T. Beesley, Bankruptcy Judge, Presiding

APPEARANCES:    Mark D. Wray, Esq. of Law Offices of Mark Wray
argued for appellant, Spigot Resources, Inc.;
Kevin Darby, Esq. of The Darby Law Practice argued
for appellee, Marc E. Radow.

Before: KIRSCHER, DUNN and JURY, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Appellant, Spigot Resources, Inc. ("Spigot"), appeals a judgment from the bankruptcy court determining Spigot had failed to prove that its state court judgment against Marc E. Radow ("Radow") was excepted from discharge under 11 U.S.C. § 523(a)(2)(A) and (a)(6).[2]  We AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.  Events leading to Radow's lawsuit against Spigot and judgment against Radow**

On August 9, 2005, Radow, as buyer, and Spigot, as seller, entered into a contract for the sale of land in Reno, Nevada for $6.5 million.  On that same date, Radow placed $50,000 into escrow as a deposit on the property.  On September 23, 2005, the parties executed an addendum to the sales contract, agreeing to continue to negotiate in good faith the property's purchase price.

During the parties' negotiations, Radow was also negotiating with a third party for the purchase of water rights for the property.  On September 28, 2005, Radow and Spigot modified the sales contract by executing Addendum #3, in which Spigot agreed to lower the sales price to $5.3 million, plus an additional $300,000 in two years, or a two bedroom, three bath condominium of Spigot's choice.  Addendum #3 also required Radow to release his $50,000 earnest money deposit within seven days of closing on the water rights.

Spigot executed Addendum #3 as a result of Radow's false representations that the costs of the water rights, sewer upgrades

---

[2] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  The Federal Rules of Civil Procedure are referred to as "Civil Rules."

and impact fees were higher than anticipated. Radow made these misrepresentations orally to Spigot and in an email Radow sent to his real estate agent, who then forwarded it to Spigot. In the email, sent initially by the seller of the water rights to Radow, Radow intentionally altered the cost of the proffered water rights from $38,000 per acre foot to $100,000 per acre foot, and altered the actual sales price for the water rights from $2.28 million to $5 million.

Radow closed on the water rights on October 6, 2005. Radow did not reveal to his real estate agent, the escrow company, or to Spigot that he had closed on the water rights on October 6, and he did not release the $50,000 earnest money deposit on October 13, 2005, as required by Addendum #3.

On October 14, 2005, Radow knowingly drafted supplemental escrow instructions that did not accurately recite the parties' agreement in Addendum #3. Spigot objected to the supplemental instructions. Ultimately, Radow never released the $50,000 earnest money deposit to Spigot or performed pursuant to the terms of the sales contract.

On November 7, 2005, Radow sued Spigot in state court for breach of written contract, breach of the covenant of good faith and fair dealing, declaratory relief, quiet title, fraudulent misrepresentation and specific performance. Because of the lawsuit, Radow also filed a Notice of Pendency of Action ("Lis Pendens"). Spigot filed its amended answer and counterclaims on November 29, 2005, denying Radow's claims and alleging

counterclaims for breach of contract and declaratory relief.[3]

After a bench trial on July 25, 2007, the state court entered a judgment in favor of Spigot on August 20, 2007 ("State Court Judgment"), determining that Radow had no right, title or interest in Spigot's property and that Spigot was entitled to damages. As part of its oral findings entered on July 27, 2007, the state court announced:

> This [Radow's misrepresentations regarding the water rights] is the clearest example of the breach of covenant of good faith and fair dealing that I have ever seen, and I think damages then do flow.
>
> . . . .
>
> As to the issue of fraud on the inducement, I am not going to directly find fraud. I think there was a breach of the covenant of good faith and fair dealing by a representation that Mr. Radow knew was not true, but I think he's explained, you know, some reasoning for it, and we are somewhat at arms length trying to renegotiate deals. And I don't want to find that this was specifically fraud.
>
> . . . .
>
> And when I look at the totality of the circumstances I am not going to find, for purposes of issuing any punitive damages, that there was fraud, malice or oppression proven by clear and convincing evidence.
>
> So I do find that all the elements of the breach of the covenant of good faith and fair dealing exist since we had the contract, we had all the predicates to deal in good faith, and I believe that this effort to renegotiate by presenting a false statement with regard to the purchase of water rights and their cost which were

---

[3] Spigot asserts that it alleged counterclaims for breach of contract, declaratory relief, civil conspiracy and fraud in the inducement. We disagree. In reviewing the complaint, the only claim actually labeled as a "claim" is for declaratory relief, which is the "Second Claim for Relief." No "First Claim for Relief" appears as such, but paragraphs 4-8 appear to set forth a claim for breach of contract. The alleged conspiracy and fraud claims, which would arguably be the "Third" and "Fourth" claims for relief, appear nowhere in the complaint, and neither do the words "fraud" or "fraud in the inducement" or "conspiracy."

-4-

already known to Mr. Radow when he sent this information to his agent for purposes of negotiating was in bad faith and that it did breach the contract, and damages flow from that.

. . . .

I think appropriate damages should flow from the breach of the covenant of good faith and fair dealing[.]

Hr'g Tr. (July 27, 2007) at 3:5-7; 4:12-18; 5:13-6:1; 3:14-15.

In its written findings and conclusions entered with the State Court Judgment (both of which were drafted by Spigot's counsel), the state court found that Radow had fraudulently misrepresented material facts to Spigot and fraudulently induced Spigot into lowering its asking price for the property. The state court found that Spigot was damaged by Radow's breach and awarded Spigot damages of $485,961 for the loss of use of its money from January 11, 2006 to the date of the State Court Judgment - i.e., the time during which the Lis Pendens was in place. Spigot was also awarded the $50,000 earnest money deposit, plus accrued interest of $7,614.25. The state court further ordered the Lis Pendens released, expunged and discharged. Radow appealed. The Nevada Supreme Court affirmed the State Court Judgment on April 30, 2009.

On January 11, 2010, an amended State Court Judgment was entered to include post-judgment interest, attorney's fees and costs, for a total judgment of $703,209.56.

**B.    The adversary proceeding**

Radow filed a chapter 7 bankruptcy case on June 3, 2010. On September 9, 2010, Spigot filed an adversary complaint seeking a determination that the State Court Judgment was excepted from discharge under § 523(a)(2)(A) and (a)(6). Notably, Spigot based

-5-

its § 523(a)(6) claim on damages it believed it suffered due to an alleged fraudulent transfer by Radow of a second deed of trust secured by certain property, that occurred approximately two weeks after the state court announced its oral ruling in favor of Spigot.

Radow moved to dismiss Spigot's complaint under Civil Rule 12(b)(6), incorporated by Rule 7012, contending that the State Court Judgment, which consisted of damages for breach of contract, did not constitute a claim for fraud under § 523(a)(2)(A). Further, argued Radow, Spigot failed to show how the transfer of a second deed of trust from Radow to his wife damaged Spigot or amounted to a claim for willful and malicious injury under § 523(a)(6). In its opposition, Spigot contended that the damages awarded in the State Court Judgment flowed from Radow's fraud, and therefore it had a claim under § 523(a)(2)(A). As for its claim under § 523(a)(6), Spigot now contended that either the purported fraudulent transfer by Radow, or the fraudulent inducement findings by the state court, satisfied a claim for willful injury.

On January 20, 2011, the parties stipulated to a Settled Statement of Facts, including certain exhibits, for trial. Based on the stipulated facts, Radow moved for summary judgment on January 28, 2011. Spigot filed a response and cross-motion for summary judgment on February 11, 2011. While Radow contended that the State Court Judgment was merely for breach of contract damages and dischargeable, Spigot argued that the damages awarded were based on findings of fraud in the inducement and intentional injury, and therefore the debt was excepted from discharge under

-6-

§ 523(a)(2)(A) and (a)(6). Spigot argued that the state court had specifically held that Spigot suffered actual harm as a proximate result of Radow's fraud.

On June 7, 2011, the bankruptcy court entered a Minute Order denying Radow's motion to dismiss and the parties' cross-motions for summary judgment. The court did not explain its reasons for denying the cross-motions for summary judgment.

On June 16, 2011, the bankruptcy court held a trial on the matter, which consisted only of oral argument based on the stipulated facts. During a colloquy with Spigot's counsel about the issue of causation for its § 523(a)(2)(A) claim, the bankruptcy court agreed that Radow breached the covenant of good faith and fair dealing by fraudulently inducing Spigot into lowering the sales price and executing Addendum #3. However, the court doubted that a causal connection existed between those actions and Spigot's damages of loss of use, which were incurred due to Radow's filing of the Lis Pendens when a dispute arose over the closing of the sale:

> My sense is that the only element you're missing here is the causal link between the bad acts of Mr. Radow and the damages that came about as a result of the [L]is [P]endens.

Hr'g Tr. (June 16, 2011) at 41:17-20. The bankruptcy court further questioned Spigot's claim for willful and malicious injury because the state court had made no findings that the Lis Pendens was improperly filed, or that Radow had acted intentionally to injure Spigot. After hearing further argument from the parties, the court took the matter under advisement.

The bankruptcy court entered its findings of fact and

-7-

conclusions of law and judgment in favor of Radow on January 13, 2012. Spigot timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the bankruptcy court err in determining that the State Court Judgment was not excepted from discharge under § 523(a)(2)(A)?

2. Did the bankruptcy court err in determining that the State Court Judgment was not excepted from discharge under § 523(a)(6)?

## IV. STANDARDS OF REVIEW

Whether a claim is excepted from discharge presents mixed issues of law and fact, which we review de novo. Peklar v. Ikerd (In re Peklar), 260 F.3d 1035, 1037 (9th Cir. 2001). When facts are undisputed and issues of credibility are not before the bankruptcy court, de novo review is appropriate. Cal. State Bd. of Equalization v. Taxel (In re Sluggo's Chi. Style, Inc.), 912 F.2d 1073, 1074 (9th Cir. 1990)(citing Brown v. Cal., 743 F.2d 664, 666 (9th Cir. 1984)). We construe exceptions to discharge under § 523 liberally in favor of the debtor. Su v. Carrillio (In re Su), 259 B.R. 909, 912 (9th Cir. BAP 2001), aff'd, 290 F.3d 1140 (9th Cir. 2002).

## V. DISCUSSION

**A. The bankruptcy court did not err when it determined that the State Court Judgment was not excepted from discharge under § 523(a)(2)(A).**

**1. Exception to discharge under § 523(a)(2)(A)**

The Code excepts from discharge any debt for money, property,

-8-

services, or credit obtained by false pretenses, a false representation, or actual fraud. § 523(a)(2)(A). To prevail on a claim under § 523(a)(2)(A), a creditor must demonstrate five elements: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct. Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 35 (9th Cir. BAP 2009) (citing Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000)). "The creditor bears the burden of proof to establish all five of these elements by a preponderance of the evidence." Id. (citing Slyman, 234 F.3d at 1085).

**2. Analysis**

The bankruptcy court determined that Spigot had failed to prove that the State Court Judgment was excepted from discharge under § 523(a)(2)(A). Spigot does not contest the bankruptcy court's findings on the first four elements, which it found in Spigot's favor. Spigot does, however, dispute the bankruptcy court's finding that its damages were not proximately caused by its reliance on Radow's misrepresentations about the water rights, but rather by the Lis Pendens Radow filed when he sued Spigot for not closing on the land sale.[4]

---

[4] Spigot contends that the state court's written findings and conclusions "found that Radow had committed fraud." Aplt. Op. Br. (continued...)

### a. Misrepresentation or fraudulent omission or deceptive conduct by debtor

The bankruptcy court found that this element was met based on the state court's findings that Addendum #3 was executed by Spigot because of Radow's false representations regarding the water rights, and Radow's knowing failure to reveal to his real estate agent, the escrow company, or to Spigot that he had closed on the water rights as required by Addendum #3, which would have triggered the release of the $50,000 earnest money deposit. We agree with this analysis and find that Spigot established this first element.

### b. Knowledge of the falsity or deceptiveness of his statement or conduct; Intent to deceive

The bankruptcy court found that, based on the state court's findings, Radow knowingly and intentionally falsified emails from the third party by changing the cost of the water rights from $38,000 per acre foot to $100,000 per acre foot and changing the sales price for the water from $2.28 million to $5 million. The bankruptcy court further found that Radow knowingly sent these falsified emails to his real estate agent with the intent to

[4](...continued)
at 18:1-3. We agree the written findings make reference to fraud. However, in reviewing page 4 of the state court transcript, the court specifically said it was not directly finding fraud, and not just as to punitive damages, but at all. Hr'g Tr. at 4:12-18; 5:13-6:1. Clearly, an inconsistency exists between the state court's oral findings and its later written findings, which were drafted by Spigot's counsel. We review awards with special scrutiny when the trial court engages in the regrettable practice of adopting the findings drafted by the prevailing party wholesale. Sealy, Inc. v. Easy Living, Inc., 743 F.2d 1385 n.3 (9th Cir. 1984).

-10-

deceive Spigot, with the expectation that Spigot would lower the price of the property. Finally, the bankruptcy court found that Radow knowingly did not reveal that he had closed on the water rights on October 6, 2005. We agree with this assessment of the facts and find that Spigot established these elements.

### c. Justifiable reliance by the creditor on the debtor's statement or conduct

For determining reliance, courts apply a subjective "justifiable" reliance standard, which turns on a person's knowledge under the particular circumstances. Citibank, N.A. v. Eashai (In re Eashai), 87 F.3d 1082, 1090 (9th Cir. 1996). "Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." Id. (quoting Field v. Mans, 516 U.S. 59, 70 (1995)(quoting the RESTATEMENT (SECOND) OF TORTS § 545A cmt.b (1976)). "[A] person is justified in relying on a representation of fact although he might have ascertained the falsity of the representation had he made an investigation." Id. (quoting Mans, 516 U.S. at 70). However, a person cannot justifiably rely on a representation if he or she knows it is false or its falsity is obvious. Eugene Parks Law Corp. Defined Benefit Pension Plan v. Kirsh (In re Kirsh), 973 F.2d 1454, 1459 (9th Cir. 1992)(a "person cannot purport to rely on preposterous representations or close his eyes to avoid discovery of the truth").

The bankruptcy court found that this element was met based on the state court's finding that Spigot lowered the sales price of the property from $6.5 million to $5.3 million, plus a condominium

-11-

for Spigot, as a result of Radow's misrepresentations.  It is undisputed that Spigot lowered its sales price because of Radow's misrepresentations about the water rights.  The bankruptcy court's findings, however, fail to say that Spigot "justifiably" relied on these misrepresentations.  Spigot assumes this finding was made; Radow has not commented on this issue.  In any event, we conclude on this record that Spigot's reliance was justified.  Spigot had been in negotiations for the land sale with Radow, an apparently sophisticated buyer, for some time, and likely had no reason to doubt his representations regarding the price of the water rights.  Further, the artificial price must not have been so "preposterous" as to put Spigot on notice that something was amiss.  Accordingly, we find that Spigot established the fourth element.

### d.   Damage to the creditor proximately caused by its reliance on the debtor's statement or conduct

To prevail on a § 523(a)(2)(A) claim, a creditor must prove that he sustained loss and damage as the proximate result of his reliance on the debtor's representations.  <u>Britton v. Price (In re Britton)</u>, 950 F.2d 602, 604 (9th Cir. 1991).  Simply put, there must be a causal nexus between the fraud and the debt.  <u>Archer v. Warner</u>, 538 U.S. 314, 325 (2003)(Thomas, J., dissenting).

Causation or proximate cause entails (1) causation in fact, which requires a defendant's misrepresentations to be a substantial factor in determining the course of conduct that results in loss and (2) legal causation, which requires a creditor's loss to "reasonably be expected to result from the reliance."  <u>Beneficial Cal., Inc. v. Brown (In re Brown)</u>, 217 B.R.

-12-

857, 862 (Bankr. S.D. Cal. 1998)(citing RESTATEMENT (SECOND) OF TORTS §§ 546, 548A). "A fraudulent misrepresentation is a legal cause of a pecuniary loss resulting from action or inaction in reliance upon it if, but only if, the loss might reasonably be expected to result from the reliance." RESTATEMENT (SECOND) OF TORTS § 548A. In other words, could Spigot's damages of loss of use reasonably be expected from its reliance on Radow's misrepresentations about the water rights?

The bankruptcy court found that Spigot had failed to meet its burden of proof on this element, determining that the state court awarded damages for Radow's recording of the Lis Pendens, Spigot's inability to sell the property, and Spigot's loss of use of the sales price (less the deposit) for the duration of time the sale was not closed by Radow, not because of Radow's misrepresentations about the water rights. The bankruptcy court further determined Spigot had failed to prove that its loss of time use of the sale price for the property was foreseeable at the time Radow manipulated the emails.

Spigot argues that not only was it reasonably foreseeable from Radow's conduct that Spigot would have its property tied up in a lawsuit, it was almost inevitable. According to Spigot, after Radow induced it to sign Addendum #3, Radow closed on the water rights for the property, which he purchased for $2.28 million but told Spigot cost $5 million. Presuming Radow would not want to lose his investment on the water rights, argues Spigot, it was not only foreseeable, but almost inevitable, that Spigot would end up in court as a foreseeable result of signing Addendum #3. Therefore, Spigot reasons, had it not been duped

-13-

into signing Addendum #3, escrow would have ended, and Spigot would never have been in the position to have its property tied up by Radow's campaign of fraud and manipulation.  Hence, argues Spigot, its damages, which were reasonably foreseeable at the time Radow committed the fraud, flowed directly from his fraud, and therefore should be excepted from discharge under § 523(a)(2)(A) per Cohen v. de la Cruz, 523 U.S. 213, 218 (1998).

It is undisputed that Radow made misrepresentations to Spigot that caused Spigot to lower the sales price of the property and execute Addendum #3.  However, in reviewing the State Court Judgment, which was based on Radow's breach of contract and his breach of the covenant of good faith and fair dealing, we conclude that the damages awarded were to compensate Spigot for the delay it endured in its inability to sell the property due to Radow's failure to close on the sale and the filed Lis Pendens.  Even though Radow's misrepresentations about the water rights provided the basis for what the state court determined was a breach of the covenant, the awarded damages of loss of use were not the proximate result of those misrepresentations or Spigot's reliance on those misrepresentations.

We understand Spigot's argument that because of Radow's misrepresentations, which led to Addendum #3, it was inevitable the parties would end up in litigation over the property, so therefore Spigot should be able to except from discharge whatever losses it suffered as a result of Radow's bad conduct.  While this sounds logical, the loss for which Spigot was awarded damages is simply too attenuated from the misrepresentations Radow made to Spigot about the water rights.

-14-

Unfortunately, we do not have a complete record of the state court proceedings, but it defies logic that Radow would dupe Spigot into executing Addendum #3, so he could then turn around and draft escrow instructions that contradicted the terms of Addendum #3, so he would then have a basis to sue Spigot and incur a tremendous amount of attorney's fees and risk losing the case, which he did. In reaching our conclusion, we certainly do not condone Radow's conduct, but we fail to see the causal connection.

Accordingly, Spigot has not proven by a preponderance that Radow's misrepresentation about the price of the water rights was the proximate cause of Spigot's damages. As a result, it did not prove its claim under § 523(a)(2)(A), and the bankruptcy court did not err in concluding so.

**B. Although the bankruptcy court applied an incorrect standard of law, it did not err when it determined that the State Court Judgment was not excepted from discharge under § 523(a)(6).**

**1. Exception to discharge under § 523(a)(6)**

The Code also excepts from discharge any debt for willful and malicious injury by the debtor to another entity or to the property of another entity. § 523(a)(6). Whether a particular debt is for willful and malicious injury by the debtor to another or the property of another under § 523(a)(6) requires application of a two-pronged test to the conduct giving rise to the injury. The creditor must prove that the debtor's conduct in causing the injuries was both willful and malicious. Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 711 (9th Cir. 2008) (reinforcing In re Su, 290 F.3d at 1146-47 and the application of a separate analysis in each prong of "willful" and "malicious").

-15-

"Willfulness" requires proof that the debtor deliberately or intentionally injured the creditor or the creditor's property, and that in doing so, the debtor intended the consequences of his act, not just the act itself. In re Su, 290 F.3d at 1143. The debtor must act with a subjective motive to inflict injury, or with a belief that injury is substantially certain to result from the conduct. Id.

For conduct to be malicious, the creditor must prove that the debtor: (1) committed a wrongful act; (2) done intentionally; (3) which necessarily causes injury; and (4) was done without just cause or excuse. Id.

**2. Analysis**

As to the willfulness prong, the bankruptcy court found that Spigot had not shown Radow "intended" to cause Spigot's loss of use damages. Further, the state court had not made a finding that Radow's lawsuit was filed in bad faith or that he wrongfully recorded the Lis Pendens. Therefore, reasoned the bankruptcy court, because Spigot had not proven that Radow intended to cause Spigot's loss of use damages by filing the lawsuit and recording the Lis Pendens, it could not find that Radow intended those consequences as a result of his falsifying the emails. Thus, the willful element was not met.

The bankruptcy court also determined that the malicious prong was not met because (1) Radow's wrongful acts of altering emails and breaching the covenant of good faith and fair dealing did not necessarily cause Spigot's loss of use damages, and because (2) neither party had presented any evidence or argument about just cause or excuse. As a result, Spigot had failed to prove the

-16-

State Court Judgment was excepted from discharge under § 523(a)(6).

Spigot contends the bankruptcy court erroneously applied the willful prong by holding that the actual injury suffered by Spigot had to be the same injury Radow intended to inflict in order for it to prevail on its claim. Spigot further argues that the state court's findings provided sufficient evidence that Radow acted without any just cause or excuse.

We conclude that the bankruptcy court erred in applying an incorrect standard of law, but not for the reasons Spigot asserts. Because tortious conduct is a required element for a finding of nondischargeability under § 523(a)(6), Spigot's breach of contract claim does not meet the statute's requirements. See Lockerby v. Sierra, 535 F.3d 1038 (9th Cir. 2008).

In Lockerby, the Ninth Circuit held that a claim for an intentional breach of contract is not "willful and malicious" under § 523(a)(6) unless it is accompanied by conduct that constitutes a tort under state law. 535 F.3d at 1043 (citing Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1206 (9th Cir. 2001); Del Bino v. Bailey (In re Bailey), 197 F.3d 997, 1000 (9th Cir. 1999)(while bankruptcy law governs whether a claim is nondischargeable under § 523(a)(6), the court looks to state law to determine whether an act falls within the underlying tort). Simply put, an intentional breach of contract is not enough. Therefore, for Spigot to have had a claim under § 523(a)(6), Radow's breach of the covenant of good faith and fair dealing must have constituted a tort under Nevada law.

Although in Nevada "every contract contains an implied

-17-

covenant of good faith and fair dealing, an action in tort for breach of the covenant arises only 'in rare and exceptional cases' when there is a special relationship between the victim and tortfeasor. A special relationship is 'characterized by elements of public interest, adhesion, and fiduciary responsibility.' Examples of special relationships include those between insurers and insureds, partners of partnerships, and franchisees and franchisers." Ins. Co. of the W. v. Gibson Tile Co., 134 P.3d 698, 702 (Nev. 2006)(en banc)(internal citations omitted).

Here, we have equal parties who negotiated a contract at arms length and who do not appear to be in any special relationship. Accordingly, the breach in this case did not constitute a tort under Nevada law, so Spigot could not prevail on a claim under § 523(a)(6). Even if Spigot could show fraud as the accompanying tort, as we concluded above, Radow's wrongful conduct did not necessarily cause Spigot's loss of use damages; thus, the malicious prong is not met.

## VI. CONCLUSION

Based on the foregoing reasons, we AFFIRM.

-18-