3 F.3d 1263
 AMERICAN INTERNATIONAL ENTERPRISES, INC., Cheker Karam,
Plaintiffs-Appellants,
v.
FEDERAL DEPOSIT INSURANCE CORPORATION, as agency of the
United States of America, as successor in interest
to Federal Savings and Loan Insurance
Corporation, Defendant-Appellee.
 No. 91-56309.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 9, 1993.
Decided Aug. 31, 1993.
 
 Morgan J.C. Scudi, Huth, Farmer & Scudi, San Diego, CA, for plaintiffs-appellants.
 Joel Eichengrun, F.D.I.C., San Jose, CA, for defendant-appellee.
 Appeal from the United States District Court for the Southern District of California.
 Before: HALL, WIGGINS, and TROTT, Circuit Judges.
 TROTT, Circuit Judge:
 
 
 1
 Plaintiffs American International Enterprises, Inc., and individual Cheker Karam appeal the dismissal of their complaint against the Federal Deposit Insurance Corporation arising out of an alleged commission agreement between the parties in a real estate sale. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291 (1988), and we affirm.
 
 
 2
 * The appellants in this case are American International Enterprises ("AIE"), a California corporation, and Cheker Karam, a real estate broker employed by AIE. Both AIE and Karam are real estate brokers licensed in California. Also, both AIE and Karam are trustees of the "Roque De La Fuente Alexander Revocable Trust No. 1" ("the trust").[1]
 
 
 3
 The appellee is the Federal Deposit Insurance Corporation ("FDIC"), the successor in interest to the Federal Savings and Loan Insurance Corporation ("FSLIC").[2] As part of its role as receiver, FSLIC owned parcels of real estate located in many parts of the country. To sell these parcels of property, the FSLIC solicited help from real estate agents to locate buyers.
 
 
 4
 In this particular instance, FSLIC solicited an offer from AIE for property located in San Diego County, California, in April, 1988. AIE submitted its offer on the property on behalf of the trust, but FSLIC selected another offer. When the deal with the successful offeror fell through, FSLIC again solicited an offer from AIE. In a letter dated July 25, 1988, AIE offered to buy the property on behalf of the trust for $4,150,000 plus a 6% commission. At that time, the trust needed to invest funds on hand to avoid federal tax penalties through the completion of a "Starker Exchange" under 26 U.S.C. Sec. 1031.[3]
 
 
 5
 The July 25 offer letter included a line upon which the FSLIC representative was requested to sign to accept the offer. The FSLIC representative did not sign the offer letter and, instead, arranged a meeting with AIE for August 3, 1988, to prepare the contract of sale. At this meeting, FSLIC produced a contract of sale which did not include a provision for payment of a 6% commission to AIE. In fact, the contract included a provision which required AIE to indemnify FSLIC from all liabilities arising from claims for brokerage commissions based on arrangements or agreements made by AIE. The contract also included an integration clause which stated the contract embodied the parties' complete agreement and superseded all prior negotiations, agreements, and understandings. The contract called for a purchase price of $4,600,000, and was signed for AIE by Cheker Karam "as Trustee."
 
 
 6
 In its complaint, AIE alleges that through its actions between July 25, 1988, and August 3, 1988, FSLIC accepted the terms of AIE's July 25 offer letter including the 6% commission. Moreover, AIE claims that at the August 3 meeting, FSLIC refused to insert a provision in the contract for sale concerning the 6% commission AIE had requested in its offer letter, and that Karam signed the contract only upon FSLIC's oral promise to pay the 6% commission and because time was running out for the trust to complete the Starker Exchange.
 
 
 7
 After completing the sale, AIE sent a letter on September 14, 1988, to FSLIC complaining about the failure of FSLIC to pay AIE the 6% commission. In this letter, AIE explained why it had signed the sales contract that did not provide for the payment of a commission:
 
 
 8
 As a fiduciary, [AIE] had the obligation to complete the purchase of the property in the interest of the trust and beneficiary. As a broker, its best interests were not to enter into the agreement to purchase until the 6% commission was provided for. Recognizing this conflict of interest, A.I.E. felt it was compelled to complete the purchase on behalf of the trust.
 
 
 9
 Nearly two years later, on August 3, 1990, AIE filed a complaint against FDIC, as successor in interest to FSLIC, seeking 6% of the final contract price of $4,600,000, or $276,000. FDIC answered the complaint on February 4, 1991. AIE filed its First Amended Complaint on April 1, 1991. The amended complaint sought recovery of damages on six counts: quantum meruit, intentional interference with contract, breach of contract, commercial misrepresentation or fraud, damages, and estoppel.[4]
 
 
 10
 In response, FDIC moved to dismiss the case pursuant to Fed.R.Civ.P. 12(b)(6) on April 15, 1991. At the date set for arguing FDIC's motion to dismiss, July 22, 1991, the district court asked for further briefing on the proper choice of law. After briefing, the court granted FDIC's motion to dismiss the complaint on September 3, 1991. The court concluded:
 
 
 11
 1. The California Statute of Frauds provides the applicable rule of decision in this matter with regard to the motion to dismiss filed by defendant FDIC; and
 
 
 12
 2. The California Statute of Frauds precludes the claims asserted by plaintiffs in this action.
 
 
 13
 In its order entered October 2, 1991, the district court also denied as moot AIE's motion to file a Second Amended Complaint.[5] AIE filed a timely notice of appeal on October 7, 1991.
 
 II
 
 14
 AIE appeals from the district court's granting of FDIC's motion to dismiss AIE's complaint under Fed.R.Civ.P. 12(b)(6). We review de novo the dismissal of a complaint under Fed.R.Civ.P. 12(b)(6). Oscar v. University Students Coop. Ass'n, 965 F.2d 783, 785 (9th Cir.) (en banc), cert. denied, --- U.S. ----, 113 S.Ct. 655, 121 L.Ed.2d 581 (1992). "In reviewing a 12(b)(6) dismissal, all allegations of material fact in the complaint are taken as true and are construed in the light most favorable to the nonmoving party." Id. "Dismissal is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Love v. United States, 915 F.2d 1242, 1245 (9th Cir.1989) (quotation omitted). The district court's dismissal of the complaint may be affirmed on any ground finding support in the record. Oscar, 965 F.2d at 785.
 
 III
 
 15
 Prior to addressing the merits of this appeal, we first must determine whether FSLIC can be sued for more than $10,000 in federal district court. We review independently the district court's assertion of subject matter jurisdiction. McCarthy v. United States, 850 F.2d 558, 560 (9th Cir.1988), cert. denied, 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989). "The existence of subject matter jurisdiction is a question of law which we review de novo." Abbott Bldg. Corp. v. United States, 951 F.2d 191, 193 (9th Cir.1991).
 
 
 16
 Generally, the United States Court of Federal Claims has jurisdiction over claims for money damages exceeding $10,000 brought against the United States or one of its agencies. 28 U.S.C. Secs. 1346(a), 1491 (1988). See also Marcus Garvey Square, Inc. v. Winston Burnett Constr. Co. of Calif., 595 F.2d 1126, 1131 (9th Cir.1979). However, through FIRREA, Congress amended the jurisdictional provisions of FDIC "to expand federal jurisdiction where the FDIC is a party." Carrollton-Farmers Branch Indep. School Dist. v. Johnson & Cravens, 13911, Inc., 889 F.2d 571, 572 (5th Cir.1989). As amended, 12 U.S.C. Sec. 1819(b)(2) provides: "Federal Court Jurisdiction--(A) In general--Except as provided in subparagraph (D), all suits of a civil nature at common law or in equity to which the Corporation, in any capacity, is a party shall be deemed to arise under the laws of the United States."[6]
 
 
 17
 The Fifth Circuit has held this language, as amended, "eliminates any concern that the federal district courts ... lack jurisdiction in these cases." Triland Holdings & Co. v. Sunbelt Serv. Corp., 884 F.2d 205, 207 (5th Cir.1989). We agree, and find an adequate summary of our reasoning in a recent Fifth Circuit case:
 
 
 18
 The subject matter jurisdiction of a federal district court includes "all civil actions arising under the Constitution, laws, or treaties of the United States." As the FDIC is a party to the [plaintiff's] civil suit, that suit is conclusively presumed to arise under the laws of the United States, and thus is within the original subject matter jurisdiction of the proper federal district court.
 
 
 19
 Buchner v. FDIC, 981 F.2d 816, 819 (5th Cir.1993) (quoting 28 U.S.C. Sec. 1331 (1988)). Therefore, we conclude the district court did have subject matter jurisdiction to hear AIE's claims against FDIC.[7]
 
 IV
 
 20
 AIE contends the district court erred in applying the California Statute of Frauds to AIE's complaint against FDIC for damages resulting from the alleged breach of an oral commission agreement.[8] In particular, AIE argues lawsuits in which FDIC is a party are governed by federal law to the exclusion of state law, especially when state law is more restrictive than the federal common law. Whether the district court applied the correct law is a question of law we review de novo. United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 
 
 21
 AIE is correct in arguing federal law is applicable to this case. The Supreme Court has held "that federal law governs questions involving the rights of the United States arising under nationwide federal programs." United States v. Kimbell Foods, Inc., 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979). We consistently have applied federal law to cases in which FDIC is a party. See, e.g., FDIC v. Woodside Constr., Inc., 979 F.2d 172, 174 (9th Cir.1992) ("A suit brought by the FDIC in its corporate capacity is decided under federal law."); FDIC v. Zook Brothers Constr. Co., 973 F.2d 1448, 1450 (9th Cir.1992) ("[S]uits in which the FDIC is a party are deemed to arise under the laws of the United States...."); FDIC v. O'Melveny & Meyers, 969 F.2d 744, 751 (9th Cir.1992) ("It is by now clear beyond doubt that federal, not state, law governs the application of defenses against FDIC."); FDIC v. New Hampshire Ins. Co., 953 F.2d 478, 481 (9th Cir.1991) ("[F]ederal law is applicable to the issues raised in this case.").
 
 
 22
 The parties, however, have not referred us to any federal statute setting forth the rule of decision in this case. Accordingly, we are "free to apply the traditional common law technique of decision and draw upon the sources of common law." New Hampshire Ins. Co., 953 F.2d at 481. AIE urges us to create a uniform federal law which does not require a real estate commission agreement to be in writing. FDIC, on the other hand, contends the district court was correct in adopting the California Statute of Frauds, which prohibits the enforcement of oral commission agreements, as the controlling federal rule in the case. A review of the principles involved in this decision leads us to affirm the district court's choice of law.
 
 
 23
 "Controversies directly affecting the operations of federal programs, although governed by federal law, do not inevitably require resort to uniform federal rules." Kimbell Foods, 440 U.S. at 727-28, 99 S.Ct. at 1458. "Frequently, state rules of decision will furnish an appropriate and convenient measure of the governing federal law." Mardan Corp. v. C.G.C. Music, Ltd., 804 F.2d 1454, 1458 (9th Cir.1986); see also Woodside Constr., 979 F.2d at 174; New Hampshire Ins. Co., 953 F.2d at 481 ("In fashioning the federal rule of decision we must apply in this case, we may adopt state law if it does not conflict with federal policies.").
 
 
 24
 "Whether to adopt state law or to fashion a nationwide federal rule is a matter of judicial policy 'dependent upon a variety of considerations always relevant to the nature of the specific government interests and to the effects upon them of applying state law.' " Kimbell Foods, 440 U.S. at 728, 99 S.Ct. at 1458 (quoting United States v. Standard Oil Co. of Cal., 332 U.S. 301, 310, 67 S.Ct. 1604, 1609, 91 L.Ed. 2067 (1947)). Under the three-part test established in Kimbell Foods, we must determine "(1) whether the issue requires 'a nationally uniform body of law'; (2) 'whether application of state law would frustrate specific objectives of the federal programs'; and (3) whether 'application of a federal rule would disrupt commercial relationships predicated on state law.' " Mardan, 804 F.2d at 1458 (quoting Kimbell Foods, 440 U.S. at 728-29, 99 S.Ct. at 1458-59). "The federal courts will formulate a federal law that supersedes state law only when it relates to federal programs and actions where '[t]he desirability of a uniform rule is plain.' " Dupnik v. United States, 848 F.2d 1476, 1481 (9th Cir.1988) (quoting Clearfield Trust Co. v. United States, 318 U.S. 363, 367, 318 U.S. 744, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943)).
 
 
 25
 We address these considerations in the context of the transaction involved in this case--an alleged oral agreement between FSLIC and a licensed California broker for a brokerage commission arising from a sale of real property located in California to a California buyer. Having reviewed the variety of considerations in light of the facts of the instant case, we conclude the district court properly applied the California Statute of Frauds.
 
 
 26
 First, a uniform federal law appears unnecessary in this situation. When liquidating the assets of a failed financial institution, FDIC is merely one player in the field of local real estate sellers. Application of the state statute of frauds is just one of many state regulations with which FDIC must comply in performing its role as seller. Like the situation in Kimbell Foods, completing a real estate transaction with a buyer requires an individualized transfer procedure, which FDIC already has in place. See Kimbell Foods, 440 U.S. at 732, 99 S.Ct. at 1460 ("Choosing responsible debtors necessarily requires individualized selection procedures, which the agencies have already implemented in considerable detail."). Therefore, following the local requirements, including the California Statute of Frauds, places no additional burdens on the federal agency.
 
 
 27
 Moreover, the failure of federal regulations to provide a statute of frauds supports the conclusion that Congress intended to adopt the state statute in this situation. Id. at 729, 99 S.Ct. at 1459 ("Because the state commercial codes furnish convenient solutions in no way inconsistent with adequate protection of the federal interest[s], we decline to override intricate state laws of general applicability on which private creditors base their daily commercial transactions." (quotations omitted)).
 
 
 28
 Furthermore, FDIC's assertion of a defense based on the state statute of frauds has been addressed and accepted with little fanfare by courts in other cases. See BML Invs. v. FDIC, 732 F.Supp. 828, 829 (E.D.Tenn.1989) (applying Tennessee statute of frauds), aff'd, 894 F.2d 1336 (6th Cir.1990); FDIC v. Shinnick, 635 F.Supp. 983, 986 (D.Minn.1986) (applying Minnesota statute of frauds); Dasco v. American City Bank & Trust Co., N.A., 429 F.Supp. 767, 769 n. 1 (D.Nev.1977) (applying Nevada statute of frauds).
 
 
 29
 Even the nature of the transaction involved in this case decries any need for a federal uniform statute. As we have recognized previously, "[W]hen the suit is related to real property, ... the state in which the land is located has a particular, although not determinative, interest in having its own law applied." United States v. California, 655 F.2d 914, 919 (9th Cir.1980). Each state has a similar interest in controlling transactions of real property located within its borders. Under these conditions, then, a uniform federal law appears unnecessary.
 
 
 30
 Second, the application of the California Statute of Frauds will not frustrate specific objectives of federal programs. Generally, requiring certain agreements to be recorded in writing benefits FDIC's efforts to complete lawful and enforceable transactions of real property. More importantly, in this case the failure of the alleged oral commission agreement will increase FDIC's proceeds from the liquidated property.
 
 
 31
 Third, by applying the state statute of frauds to sales of real property by FDIC, a court prevents a disruption of commercial relationships predicated on state law. Under this ruling, all brokers know any commission agreements made with FDIC in California real estate transactions must be in writing, the same procedure required when conducting real property transactions in California with any other seller.
 
 
 32
 Under the foregoing analysis, then, we agree with the Supreme Court in Kimbell Foods that "the prudent course is to adopt the readymade body of state law as the federal rule of decision until Congress strikes a different accommodation." Kimbell Foods, 440 U.S. at 740, 99 S.Ct. at 1464. Therefore, we hold the district court properly adopted the California Statute of Frauds as the controlling law in this case.
 
 V
 
 33
 AIE also contends the district court erred in dismissing its claims for breach of contract. AIE argues that whether a contract was formed by FDIC's alleged acceptance of the July 25 offer letter was a question of fact for a jury.
 
 
 34
 From the facts, we find it very doubtful that a contract was formed by FDIC's actions after it received AIE's July 25 offer letter. Nevertheless, if FDIC, by its subsequent actions, had accepted AIE's July 25 offer letter, the commission agreement formed would not satisfy the California Statute of Frauds. Under the statute of frauds, the commission agreement sued upon in this case must be "in writing and subscribed by the party to be charged or by his agent." Cal.Civ.Code Sec. 1624 (West Supp.1993). Even if FDIC's actions were deemed an acceptance of the offer letter, any contract formed by FDIC's nonwritten acceptance of AIE's July 25 offer letter would not be signed by "the party to be charged." Moreover, the signature on FDIC's bid request letter would not satisfy this requirement because AIE pleads the contract under which they seek recovery was formed by their own July 25 offer letter and FDIC's subsequent actions. We conclude the district court did not err in dismissing AIE's claims based on an implied in fact contract.
 
 VI
 
 35
 AIE argues that even if the California Statute of Frauds applies, the district court erred in dismissing its causes of action based on quantum meruit, misrepresentation, fraud, and estoppel, which are unrelated to the statute of frauds. None of these arguments have merit.
 
 
 36
 First, AIE contends its cause of action under a theory of quantum meruit should not have been dismissed. The California courts have soundly rejected this argument as a way to skirt the barrier established by the statute of frauds: "[L]icensed brokers, who cannot recover under oral agreements invalid under the statute of frauds, are also prohibited from recovery in quantum meruit for the reasonable value of their services." Phillippe v. Shapell Indus., Inc., 43 Cal.3d 1247, 241 Cal.Rptr. 22, 743 P.2d 1279 (1987), cert. denied, 486 U.S. 1011, 108 S.Ct. 1742, 100 L.Ed.2d 205 (1988). In fact, "[t]he quantum meruit theory of recovery in these circumstances 'has been so roundly rejected by the [California] courts that many recent attempts by brokers to recover commissions do not even raise it.' " Id. at 1288 (quoting Cal.Real Property Sales Transactions Sec. 2.55 at 110 (Cont.Ed.Bar 1981)).
 
 
 37
 Second, AIE contends its estoppel cause of action should have survived the 12(b)(6) motion. Again, Phillippe forecloses AIE's argument: "The fact that a broker's principal does not pay for the broker's services under an unenforceable oral contract does not constitute unjust enrichment sufficient to support equitable estoppel." Phillippe, 743 P.2d at 1287. Courts consistently have held "a broker's presumed knowledge of the statute of frauds precludes him from showing the reasonable reliance on an oral agreement that is necessary to assert equitable estoppel." Id. at 1292.[9]
 
 
 38
 Finally, AIE asserts the district court should not have dismissed his causes of action based on commercial misrepresentation and fraud. "To recover for fraud in any case the plaintiff must show that he reasonably relied on the defendant's misrepresentations. The plaintiff cannot recover if his reliance was not justified or reasonable." Id. at 1292. Again, however, "[b]y parity of reasoning, a broker's reliance on an oral promise to pay a commission or an oral promise to execute the required writing at a later date cannot be sufficiently reasonable to support an action for fraud." Id.
 
 
 39
 AIE argues Phillippe establishes some situations in which a jury is required to determine the reasonableness of a broker's reliance. Although the court in Phillippe does note that "[t]here may be other types of promises on which a broker could reasonably rely," id., the court goes on to explain that "a licensed broker's reliance can be reasonable only in rather limited circumstances." Id. AIE's alleged reliance on an oral promise to pay a commission, however, has been held as a matter of law to be unreasonable. Id. ("[R]eliance on an oral promise to pay a commission ... cannot be sufficiently reasonable to support an action for fraud."). We hold the district court properly dismissed all the claims in AIE's complaint.
 
 CONCLUSION
 
 40
 We affirm the district court's application of the California Statute of Frauds to the issues presented in AIE's complaint. Also, we affirm the district court's granting of FDIC's 12(b)(6) motion to dismiss all causes of action in AIE's complaint.
 
 
 41
 AFFIRMED.
 
 
 
 [1]
 The trust apparently is named in part after the president of AIE, Roque De La Fuente II
 
 
 [2]
 The Financial Institution Reform, Recovery and Enforcement Act of 1989 ("FIRREA") abolished the FSLIC, and required the FDIC to assume the FSLIC's role as receiver. See Pub.L.No. 101-73, 103 Stat. 83, 354 (1989); FDIC v. Claycomb, 945 F.2d 853, 858 (5th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 2301, 119 L.Ed.2d 224 (1992). Assets transferred to the FSLIC are now managed by FDIC as manager of the FSLIC Resolution Fund, pursuant to FIRREA. 12 U.S.C. Sec. 1821a
 
 
 [3]
 Section 1031 is an exception to the general rule requiring recognition of gain or loss upon the sale or exchange of property. Under 26 U.S.C. Sec. 1031(a), if property held for productive use is exchanged for like-kind property, the taxable gain is not realized until the acquired property is disposed of
 The term "Starker exchange" takes its name from our holding in Starker v. United States, 602 F.2d 1341 (9th Cir.1979), in which we found a like-kind exchange was effectuated where the taxpayer, Starker, exchanged property for a third-party purchaser's rights to like-kind property. In Starker, we held that the rights to the property amounted to a fee interest and, as such, an exchange of like-kind property had in fact taken place. Starker, 602 F.2d at 1355.
 
 
 [4]
 In Count 3 of the First Amended Complaint, AIE seeks $276,000 in damages for breach of contract. In that Count, AIE contends the contract was formed on or about July 25, 1988, in the city of San Diego, when the parties allegedly entered into a written contract made up of the FSLIC's invitation to bid dated July 22, 1988, and the trust's offer, dated July 25, 1988. Even though the express terms of the offer included both a price of $4,150,000 and a request for a 6% commission, AIE nevertheless seeks $276,000 in commission, representing 6% of $4,600,000, the price eventually agreed upon in the written sales contract dated August 3, 1988. We are curious how AIE's request for damages can be based not on the contract AIE alleges contains a 6% commission term, but on the contract AIE eventually signed, which did not contain such a term
 
 
 [5]
 In the Statement of Issues in its opening brief to this court, AIE argues the district court erred in denying plaintiffs' motion to amend the complaint to include actions not barred by the California Statute of Frauds. However, AIE mentions nothing further on this issue in either brief. Therefore, we refuse to address this contention, because the brief of the appellant must contain "the contentions of the appellant with respect to the issues presented, and the reasons therefor." Fed.R.App.P. 28(a)(5). Issues raised in the brief that are not supported by argument are deemed abandoned. United States v. Loya, 807 F.2d 1483, 1486-87 (9th Cir.1987) (citing Iob v. Los Angeles Brewing Co., 183 F.2d 398, 401 (9th Cir.1950))
 
 
 [6]
 The exception found in subparagraph (D) is inapplicable to the instant case as it pertains to actions "which involve[ ] only the preclosing rights against the State insured depository institution, or obligations owing to, depositors, creditors, or stockholders by the State insured depository institution." 12 U.S.C. Sec. 1819(b)(2)(D)(ii)
 
 
 [7]
 This case also presents the question of AIE's exhaustion of administrative procedures. AIE's claim arose during a period of time in which FSLIC's administrative procedures were challenged in the Supreme Court. Only six months after AIE requested payment of a 6% commission from FSLIC in its letter dated September 14, 1988, the Supreme Court struck down as inadequate FSLIC's claims procedures. See Coit Independence Joint Venture v. FSLIC, 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989)
 On March 24, 1989, three days after the decision in Coit, the Federal Home Loan Bank Board, at that time the governing board of FSLIC, adopted new rules concerning the administrative handling of claims such as AIE's. See 54 Fed.Reg. 12414 (1989) (to be codified at 12 C.F.R. Sec. 575a). These new rules provided: "[N]o person may sue the FSLIC as receiver for a savings institution that is in liquidation unless the person has presented written notice to the receiver of an intention to file suit against the receiver, and afforded the receiver 180 days in which to evaluate any potential claims." This rule was made applicable to "persons who, as of the date this section was adopted, had filed claims with the FSLIC as receiver," and was in effect until the claims procedures created in FIRREA were enacted on August 9, 1989. See 12 U.S.C. Sec. 1821(d)(13)(D) (West Supp.1989).
 We determine the failure to exhaust administrative procedures created by FIRREA does not prevent us from addressing this appeal. First, no party claims AIE failed to exhaust its administrative remedies, and therefore we need not address the issue. Abbott, 951 F.2d at 194. Moreover, FDIC concedes AIE complied with the rules enacted March 24, 1989, first by providing written notice to FSLIC of its claim in the September 14, 1988, letter, and then by filing suit more than 180 days after giving written notice of its claim. We agree with FDIC that AIE was not required to file a second claim in order to comply with the new administrative procedures enacted through FIRREA.
 
 
 [8]
 The California Statute of Frauds provides:
 The following contracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent:
 ....
 
 
 [5]
 An agreement authorizing or employing an agent, broker, or any other person to purchase or sell real estate, or to lease real estate for a longer period than one year, or to procure, introduce, or find a purchaser or seller of real estate or a lessee or lessor of real estate where such lease is for a longer period than one year, for compensation or a commission[.]
 Cal.Civ.Code Sec. 1624 (West Supp.1993).
 
 
 [9]
 Courts have recognized two "narrow" exceptions to this rule. An unlicensed broker may be entitled to invoke equitable estoppel against a statute of frauds defense either "where the real estate broker cancelled an otherwise valid written contract with the sellers ... in reliance on the buyer's oral promise that he would pay the broker's commission [or] where the broker's principal has represented to the broker that his authorization was in writing when in fact it was not." Phillippe, 743 P.2d at 1285 & n. 8. Here, however, AIE's claims do not fall within one of the exceptions