74 F.3d 1246
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Douglas Keith KROHNE, Plaintiff-Appellee,
v.
Kurt S. PETERSON, et al., Defendants-Appellants.
 No. 94-35917.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 16, 1995.
Decided Jan. 17, 1996.
 
 Before: REINHARDT, TROTT and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Defendants-appellants, who are various Washington state prison officials ("defendants"),[1] appeal from the denial of their motion to dismiss plaintiff-appellee Douglas Keith Krohne's ("Krohne") claim under 42 U.S.C. Sec. 1983 on qualified immunity grounds. Krohne alleged that the defendants violated his rights security risk after learning of the escape charge.[2] She had apparently learned of the Montana charge by running Krohne's name through the Offender Based Tracking System ("OBTS"), which indicated that Krohne had a "potential detainer" lodged against him. Apparently, WCC officials entered Krohne into the OBTS based on the Governor's Warrant and accompanying documents. After reviewing the OBTS report, Halliday noted on Krohne's prison record that a "notification detainer" was lodged against him.[3]
 
 
 3
 After meeting with Halliday, Krohne asked several of the defendants at the Reception Center to give him "IAD forms" so that he could request an expeditious disposition of the escape charge. They refused. Krohne alleges that he was not given the forms because defendants did not permit prisoners to deal with their detainers from the Reception Center.
 
 
 4
 In December, 1992, the State Department of Corrections ("DOC") transferred Krohne to the Washington State Penitentiary at Walla Walla ("WSP"). While processing Krohne's file, prison officials noticed the Governor's Warrant and accompanying documents. On December 22, 1992, a letter was sent to Sheriff Johnson of Park County, Montana, stating in part:
 
 
 5
 In our central file is a copy of a letter dated August 3, 1992; and copies of Governors' [sic] Warrants (no longer valid).
 
 
 6
 If you wish a detainer placed on felony charges, please send a letter requesting a detainer, along with certified copies of the warrant, information/indictment, fingerprints, and photo, etc.
 
 
 7
 In response, the Park County Sheriff's Office sent a letter to WSP "requesting that a detainer be placed" on Krohne. WSP received this letter on February 18, 1993. A WSP official met with Krohne on February 24, 1993, and served him with a copy of the detainer and gave him the IAD forms to request immediate disposition of the escape charge.[4]
 
 PROCEEDINGS BELOW
 
 8
 Defendants' motion to dismiss the amended complaint raised the defense of qualified immunity. They also argued that the Eleventh Amendment barred the state law claims. The magistrate judge recommended that the motion to dismiss the state law claims be granted, but that the motion be denied with respect to the Sec. 1983 claim. The magistrate judge concluded that the Governor's Warrant fit the congressional and Supreme Court definition of an IAD detainer. The district judge adopted and approved the magistrate judge's report and recommendation. This appeal followed.
 
 JURISDICTION
 
 9
 A denial of a claim of qualified immunity is an appealable "final decision" under the collateral order doctrine. Thus, we have jurisdiction of this appeal. See Mitchell v. Forsyth, 472 U.S. 511, 530 (1985).
 
 STANDARD OF REVIEW
 
 10
 We review de novo the dismissal of a complaint under Fed.R.Civ.P. 12(b)(6). American Int'l Enters., Inc. v. FDIC, 3 F.3d 1263, 1266 (9th Cir.1993). We review de novo a denial of qualified immunity in a case arising under 42 U.S.C. Sec. 1983. Browning v. Vernon, 44 F.3d 818, 821 (9th Cir.1995). We review questions of law de novo. Toussaint v. McCarthy, 801 F.2d 1080, 1087 (9th Cir.1986), cert. denied, 481 U.S. 1069 (1987).
 
 DISCUSSION
 
 11
 There are two issues in this case: 1) Did Krohne state a claim that defendants violated his rights under the IAD? 2) Are defendants entitled to qualified immunity?
 
 
 12
 On a 12(b)(6) motion to dismiss, all material allegations must be taken as true. "Dismissal is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim" that would entitle him to relief. American Int'l, 3 F.3d at 1266 (quotation omitted).
 
 
 13
 We affirm the judgment below because it would be premature to dismiss the case under Rule 12(b)(6). Krohne contends that a detainer under the IAD was lodged against him while he was at the Reception Center. Defendants contend that a detainer was not lodged against Krohne until February, 1993. Because this is partly a fact based dispute, the record must be developed to determine which party has the better argument.
 
 
 14
 * To state a claim for relief under 42 U.S.C. Sec. 1983, a plaintiff must show: 1) the conduct complained of was committed by a person acting under the "color of state law;" and 2) the conduct deprived the person of a right secured by federal law.[5] Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds Daniels v. Williams, 474 U.S. 327 (1986), overruled in part on other grounds Davidson v. Cannon, 474 U.S. 344 (1986).
 
 
 15
 The federal law at issue here is Article III(c) of the IAD. It provides that the official having custody of the prisoner "shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition." (Emphasis added.) Krohne contends that the "notification detainer," entered on his record at the Reception Center was a detainer within the meaning of the IAD. Thus, defendants violated his civil rights by refusing to give him the forms necessary to seek disposition of the escape charge in compliance with Article III(c) at that time.
 
 
 16
 Defendants contend that no detainer was lodged against Krohne until February, 18, 1993, when Montana requested that a detainer be placed on Krohne. Therefore, their obligation to comply with Article III(c) did not arise until February 18, 1993, and they were not obligated to provide the IAD forms to Krohne when he requested them in late 1992.
 
 II
 
 17
 The IAD is an agreement between adopting states that establishes the procedures by which one jurisdiction may obtain custody over a prisoner in another jurisdiction for the purpose of bringing the prisoner to trial on an outstanding charge. Both Montana and Washington are parties to the IAD.[6] The IAD is "a congressionally sanctioned interstate compact within the Compact Clause, U.S. Const., Art, I, Sec. 10 cl. 3, and thus is a federal law subject to federal construction." Carchman v. Nash, 473 U.S. 716, 719 (1985).[7]
 
 
 18
 The IAD itself does not define "detainer." The Supreme Court, however, has adopted a definition from the legislative history of the IAD: " '[a] detainer is a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction.' " United States v. Mauro, 436 U.S. 340, 359 (1978) (quoting H.R.Rep. No. 91-1018, 91st Cong., 2d Sess. 2 (1970); S.Rep. No. 91-1356, 91st Cong., 2d Sess. 2 (1970)). This Circuit has also defined a detainer as: "simply a document notifying one state (the sending state) that another state (the receiving state) wants to prosecute a prisoner that the sending state is holding." Burrus v. Turnbo, 743 F.2d 693, 696 (9th Cir.1984), cert. granted, 474 U.S. 816, vacated on other grounds, 474 U.S. 1016 (1985).
 
 
 19
 However, there are limits to these seemingly broad definitions. In Mauro, the Court held that an ad prosequendum writ was not a detainer within the meaning of the IAD. 436 U.S. at 356-59.[8] As this writ requires the immediate presence of the state prisoner, there was no need to deem it a detainer:
 
 
 20
 The adverse effects of detainers that prompted the drafting and enactment of the [IAD] are thus for the most part the consequence of the lengthy duration of detainers. Because a detainer remains lodged against a prisoner without any action being taken on it, he is denied certain privileges within the prison.... For these reasons the stated purpose of the [IAD] is "to encourage the expeditious and orderly disposition of [outstanding] charges...."
 
 
 21
 Because writs of habeas corpus ad prosequendum issued by a federal court ... are immediately executed, enactment of the [IAD] was not necessary to achieve their expeditious disposition.
 
 
 22
 Id. at 360 (emphasis in original).
 
 
 23
 Based on this reasoning, several jurisdictions have held that a Governor's Warrant is not a detainer subject to the IAD. See, e.g., State ex rel. Bailey v. Shepard, 584 F.2d 858 (8th Cir.1978), cert denied, 440 U.S. 926 (1979), State v. Roberson, 897 P.2d 443 (Wash.Ct.App.1995), People v. Quackenbush, 687 P.2d 448 (Colo.1984). These cases rely on the fact that a Governor's Warrant is a demand for the immediate extradition of the prisoner. Roberson, 897 P.2d at 605. Thus, as in the case of an ad prosequendum writ, there is no need to invoke the IAD because Governor's Warrants are to be executed immediately. Id.
 
 
 24
 At this time, we do not need to decide whether we agree with these cases. Finding that a Governor's Warrant is not subject to the IAD would not necessarily resolve whether a detainer was lodged against Krohne while he was at the Reception Center.
 
 
 25
 There is an indication in the limited record before us that a document from Montana accompanied the Governor's Warrant and was placed into Krohne's prison record. This document may have been a detainer in and of itself. See, e.g., United States v. Reed, 620 F.2d 709, 711 (9th Cir.), cert. denied, 449 U.S. 880 (1980) (stating that notation "hold for U.S. Marshals" could, in certain circumstances, constitute a detainer under the IAD). Additionally, the record also indicates that Washington prison officials did not honor Governor's Warrants by giving them immediate effect. If this is true, then the mere fact that the document was designated a "Governor's Warrant" would not be controlling in light of the fact that defendants may not have acknowledged the document as one that was entitled to be immediately executed.[9]
 
 
 26
 If the Governor's Warrant and/or the accompanying documents did constitute an IAD detainer, then defendants failed to comply with the notice requirements of Article III(c). On this limited record, we are unable to determine whether any of these documents did constitute a detainer under the IAD.[10] Accepting his factual allegations as true, Krohne may be able to show, on a developed record, that a detainer was received by defendants while he was housed at the Reception Center.
 
 
 27
 We do not, however, agree with the district court's affirmative finding that a detainer was lodged against Krohne while he was at the Reception Center. Such a finding is not supported by the record at this stage of the litigation.
 
 III
 
 28
 Defendants argue that even if the "notification detainer" did implicate the protection of the IAD, they are immune from liability under the doctrine of qualified immunity. Again, it would be premature to reach such a conclusion on this limited record.
 
 
 29
 A two-part inquiry determines whether defendants are entitled to qualified immunity: 1) Was the law governing the defendants' conduct clearly established? 2) Under that law, could a reasonable person have believed the conduct was lawful? Act Up!/Portland v. Bagley, 988 F.2d 868, 871 (9th Cir.1993).
 
 
 30
 Article III(c) requires that an official having custody of the prisoner "shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition." This provision clearly establishes the legal obligations of defendants.
 
 
 31
 Under the reasonable person analysis, a court is to decide whether an objective, reasonable official could believe she or he was acting in compliance with the law. Id. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).
 
 
 32
 The Supreme Court recently held that a qualified immunity ruling is a legal issue that must be decided only in reference to undisputed facts. Johnson v. Jones, 115 S.Ct. 2151, 2156 (1995) (citing Mitchell v. Forsyth, 472 U.S. at 530 n. 10). "[A]n appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts." Id.
 
 
 33
 At this stage of the proceeding, dismissal would be premature because Krohne has alleged a set of facts, which, if true, indicate that defendants are not entitled to qualified immunity. Krohne alleges that the reason he was not provided with the IAD forms is because WCC did not allow prisoners to request final dispositions of outstanding charges from the Reception Center. He asserts that the fact that his detainer was labeled a "notification detainer" had nothing to do with the failure of the WCC to protect his rights under the IAD. These facts must be accepted as true. See DiMartini v. Ferrin, 889 F.2d 922, 925 (9th Cir.1989), amended, 906 F.2d 465 (9th Cir.1990), cert. denied, 501 U.S. 1204 (1991).
 
 
 34
 Krohne alleges that this policy was not reasonable under the IAD because prisoners, like himself, could be housed at the Reception Center for months. If true, this would be a clear violation of Article III(c). The district court correctly denied the motion to dismiss on the basis of qualified immunity.
 
 
 35
 The finding that an IAD detainer was lodged against Krohne at the Reception Center is VACATED; otherwise, the judgment is AFFIRMED. Each side shall bear his or their own costs on appeal.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The named defendants are: Chase Riveland, Secretary of Washington State Department of Corrections; Kurt Peterson, Superintendent of Washington Corrections Center ("WCC"); Ray Armstrong, Counselor at WCC; John Brown, Librarian at WCC
 
 
 [2]
 If Krohne had been classified as a minimum security risk he could have participated in a work release program
 
 
 [3]
 Halliday understood there to be two kinds of detainers. A "hard detainer" was a felony detainer that had been officially lodged against the prisoner by another jurisdiction. A "notification detainer" was an indication that another jurisdiction had expressed interest in the prisoner, without having filed the formal documents necessary to lodge a "hard detainer." Halliday deducted the same amount of points from Krohne's security classification score based on the "notification detainer" as she would have for a "hard detainer."
 
 
 [4]
 On July 2, 1993, a Walla Walla County Superior Court judge granted Krohne's petition for habeas corpus and ordered Krohne released from prison. The judge found that a detainer had been lodged against Krohne under the IAD, and that WCC officials had prevented him from requesting an expeditious disposition of the escape charge
 
 
 [5]
 It is not disputed that defendants acted under the color of state law
 
 
 [6]
 Washington adopted the IAD in 1967; it is codified at Wash.Rev.Code Sec. 9.100.010 (1988). Montana adopted the IAD in 1963; it is codified at Mont.Code Ann. Sec. 46-31-101 et seq (1995)
 
 
 [7]
 Because the IAD is a federal law subject to federal interpretation, we reject defendants' argument that the "notification detainer" could not have triggered the IAD because it did not meet the formal requirements of the Washington Administrative Code ("WAC"). The WAC's definitions are not controlling
 
 
 [8]
 An ad prosequendum writ allows federal officials to secure the presence of state prisoners for federal trials. Id. at 358
 
 
 [9]
 Defendants rely on a recent Washington intermediate appellate court opinion, State v. Roberson, 897 P.2d 443 (Wash.App.1995), which held that a governor's extradition warrant was not a detainer under the IAD because such warrants "are demands for immediate custody of the person...." Id. at 445. However, the facts in that case flatly contradict such a characterization. There, a Washington Governor's Warrant was issued on November 22, 1991, and sent to the county jail where the defendant was incarcerated the same day. On September 4, 1992, the defendant was transferred to the WCC. A formal detainer was not filed until February 22, 1993. Id. at 444. Thus, the Governor's Warrant remained pending for a period of 15 months
 Roberson confirms that nomenclature should not be determinative and that the inquiry into what is or is not an IAD detainer is a fact-based inquiry.
 
 
 [10]
 We also need not decide whether an electronic entry on the OBTS may, itself, be a detainer