**MALJACK PRODUCTIONS, INC.,**
**Plaintiff–Appellant,**

v.

**GOODTIMES HOME VIDEO CORP.,**
**Defendant–Appellee.**

Nos. 94–56444, 95–55632.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 6, 1996.

Decided April 17, 1996.

David A. Gerber, D. Gerber Law Offices, Oxnard, California, for plaintiff-appellant.

Helene M. Freeman, Dorsey & Whitney PLLP, New York City, for defendant-appellee.

Before BEEZER, BRUNETTI and JOHN T. NOONAN, Circuit Judges.

BEEZER, Circuit Judge:

Maljack Productions, Inc. ("MPI") alleges that GoodTimes Home Video Corp. ("Good-Times") is violating copyright, trademark and California law by producing and selling videocassette recordings of the movie "McLintock." The district court granted summary judgment for GoodTimes and awarded attorneys' fees. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

I

MPI received a quitclaim interest in videocassette recordings of "McLintock" from Batjac Productions, Inc., which owned the copyright to the film. The "McLintock" motion picture copyright expired in 1991, and the film itself is public domain work. The music in the film was separately copyrighted, however, and is still protected by copyright law. GoodTimes' rights derive from United Artists ("UA"), which owned the music copyrights.[1]

MPI claims that it is the sole owner of the "synchronization rights" to the film, i.e., the right to synchronize the music with the film. MPI bases its argument on its interpretation of the 1962 contract between Batjac and UA. Batjac, the producer of the movie, licensed the motion picture rights to UA for seven years. The section conveying the motion picture rights contained a "future technologies" clause, explicitly granting UA permission to exploit the picture "by any other scientific, mechanical or electronic means, method or device now known or hereafter conceived or created." At the end of seven years, the motion picture rights (including the future technologies clause) reverted to Batjac.

The contract separately conveyed to UA in perpetuity rights to musical works in the film. Although this section did not include a future technologies clause, the contract gave UA "any and all worldwide rights under copyright and otherwise ... to the music and musical compositions recorded or contained upon the sound track of the Picture."[2]

---

**1.** EMI Catalogue Partnership ("EMI"), the successor in interest to UA, licensed to GoodTimes the right to use the musical compositions in connection with the manufacturing and distribution of the film.

**2.** The full text of the clause reads:

The district court granted summary judgment to GoodTimes on MPI's copyright and trademark claims, and dismissed MPI's California Civil Code § 980 claim. The district court awarded attorneys' fees to GoodTimes on the copyright claims.

## II

■ We review de novo a grant of summary judgment. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 1261, 134 L.Ed.2d 209. We review de novo a dismissal for failure to state a claim. *Oscar v. University Students Co-Operative Ass'n,* 965 F.2d 783, 785 (9th Cir.) (en banc), *cert. denied,* 506 U.S. 1020, 113 S.Ct. 655, 656, 121 L.Ed.2d 581 (1992).

### A

The district court correctly found that MPI did not have standing to pursue its copyright claims. The Copyright Act allows "[t]he legal or beneficial owner of an exclusive right under a copyright ... to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b).

■ MPI claims that its synchronization rights derive from the music copyrights, which were renewed by GoodTimes' predecessor.[3] According to MPI, in the original Batjac/UA contract, Batjac reserved the right to synchronize the music in any future technologies, including videocassettes. MPI relies heavily on the lack of a future technologies clause in the section of the contract granting music rights to UA. Although UA owned the music copyrights, MPI argues that Batjac reserved the rights to the music which was recorded "on the very soundtrack of the picture."

MPI's theory, however, contradicts the plain language of the contract between Batjac and UA, which grants *all* music rights to UA, including the right to copyrights in "the music and musical compositions recorded or contained upon the sound track of the Picture." If the synchronization rights are part of the music copyrights, they do not belong to MPI.

Our holding is supported by *Cohen v. Paramount Pictures Corp.,* 845 F.2d 851 (9th Cir.1988). In *Cohen,* the owner of a license to exhibit the film "by means of television" was not entitled to exploit the picture in a new medium (videocassettes) which was anticipated by neither party. *Id.* at 854. Contrary to MPI's assertion, we did not say in *Cohen* that absent a future technologies clause, the author/grantor always reserves the right to exploit the work in new mediums. Rather, we relied on the language of the parties' contract, which reserved to the grantor "all rights and uses in and to said musical composition, except those herein granted to the licensee." *Id.* Here, the contract states without exception that all musical rights were granted to UA, not Batjac.

■ MPI points out that while Batjac had the copyright to the motion picture, Batjac "owned the exclusive right to use the musical works in the picture." These rights, however, existed as part of the movie copyright,

---

17. *Music Rights:* In addition to, but not by way of limitation of, all rights herein elsewhere granted, Producer hereby grants, sells, assigns, transfers and sets over unto United, its successors, representatives and assigns (including any subsidiaries or affiliates of United) to the extent of Producer's rights, *any and all worldwide rights under copyright and otherwise,* and the right to secure copyright throughout the world in and to the music and musical compositions recorded or contained upon the sound track of the Picture, for the period of copyright of such music and musical compositions and any renewals thereof, *and all other rights with respect to such music and musical compositions granted by the writers thereof or others to Producer.* (Emphasis added).

3. Understandably, MPI does not argue that the synchronization rights were part of the motion picture copyright, because they would have expired when the motion picture copyright expired. It also does not argue that the synchronization rights existed separately from the motion picture and music copyrights; if that were the case, because Batjac did not copyright the synchronization rights, they would be part of the public domain.

We do not decide whether the synchronization rights existed as part of the music copyrights, the movie copyrights, or independently, because MPI cannot prevail under any theory of copyright law.

which expired in 1991. Batjac's use of the music in the motion picture did not give Batjac any right to the *music* copyrights. *Stewart v. Abend,* 495 U.S. 207, 223, 110 S.Ct. 1750, 1761, 109 L.Ed.2d 184 (1990) ("The aspects of a derivative work added by the derivative author are that author's property, but the element drawn from the preexisting work remains on grant from the owner of the pre-existing work.") [4]

### B

■ MPI challenges the district court's exclusion of the testimony of the film's producer and attorneys who drafted the Batjac/UA contract, which MPI argues explains the meaning of the contracts. We review the decision to exclude evidence on a summary judgment motion for an abuse of discretion. *Maffei v. Northern Ins. Co. of New York,* 12 F.3d 892, 897 (9th Cir.1993).

■ MPI states the excluded testimony proves that "[t]he parties had no intention of limiting Batjac's reverted rights in the Picture through the music rights grant" and that the terms "the Picture" and "the properties thereof," which reverted to Batjac, "included the music, script, sound, the set dressings, and every other element inherent in the creation and production of the motion picture." Even if this testimony were accepted, it would be irrelevant. This testimony shows that the parties intended for the motion picture copyright to protect Batjac's interests; however, Batjac's rights protected by the motion picture copyright expired when Bat-

jac failed to renew the motion picture copyright. If the testimony was offered to prove Batjac had an interest in the music copyrights, under either California or federal parol evidence rules, it was properly excluded.[5] *See Jones–Hamilton Co. v. Beazer Materials & Servs., Inc.,* 973 F.2d 688, 692 (9th Cir. 1992) (applying California rule) (district court must consider extrinsic evidence in deciding whether contract is ambiguous, but may exclude evidence which tends to prove a meaning of the contract to which the language "is not reasonably susceptible"); *United States v. Triple A Mach. Shop, Inc.,* 857 F.2d 579, 585 (9th Cir.1988) (applying federal rule) (parol evidence cannot contradict contract that is fully integrated and unambiguous).

### III

MPI argues that GoodTimes' use of the title of the movie ("McLintock") violates trademark law. Although the title is not a registered trademark, the Lanham Act provides protection for unregistered names.[6] 15 U.S.C. § 1125. The Act prohibits the use of any name which "is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship, or approval of" goods.

■ Generally, the title of a public domain work cannot be protected by trademark.[7] *See G. & C. Merriam Co. v. Syndicate Publishing Co.,* 237 U.S. 618, 622, 35 S.Ct. 708, 709, 59 L.Ed. 1148 (1915) ("After the expiration of the copyright of that char-

---

4. *Stewart* interpreted the 1909 version of the Copyright Act, which is at issue here. As *Stewart* noted, the 1976 Act made the rule explicit. *See* 17 U.S.C. § 103(b).

5. MPI argued to the district court that the federal parol evidence rule applied, then argued in its motion for reconsideration that the California rule applied. The Batjac/UA contract states that the law of New York should apply, and says the contract "cannot be orally changed." The New York parol evidence rule parallels the federal rule. *Wards Co. v. Stamford Ridgeway Assocs.,* 761 F.2d 117 (2d Cir.1985) (applying New York law).

6. California's unfair competition law is "substantially congruent" to Lanham Act claims. *Cleary v. News Corp.,* 30 F.3d 1255, 1262–63 (9th Cir.

1994). Section III's analysis applies to the California unfair competition claims as well.

7. MPI argues that the movie is not public domain work because part of the film (i.e., the music) is still protected by copyright. MPI fails to show how the music copyrights are relevant to its trademark claim. MPI alleges trademark infringement based on GoodTimes' use of the motion picture title, not GoodTimes' use of the music titles.

We decline to consider MPI's argument that the title character enjoys trademark protection, because MPI raised this argument for the first time in its reply brief. *Greenwood v. Federal Aviation Admin.,* 28 F.3d 971, 977 (9th Cir.1994) ("We will review only issues which are argued specifically and distinctly in a party's opening brief.").

acter, it is well-settled that the further use of the name, by which the publication was known and sold under the copyright, cannot be acquired by registration as a trade-mark; for the name has become public property, and is not subject to such appropriation."). If the law were otherwise, "the policy of limiting the period of protection of copyrighted works would be frustrated, since dissemination of the work under a different title would seriously hamper the public distribution of the work." 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 2.16, at 2–193 (1995).

■ The use of the title of a public domain work, however, cannot be used to deceive the public as to the origin of the work, and "use of the name must be accompanied with indications sufficient to show that the thing manufactured or sold is the work of the one making it." *Merriam,* 237 U.S. at 623, 35 S.Ct. at 710. Thus, if the title of a public domain work has acquired secondary meaning, a later user cannot employ the title in a way which would likely confuse the public as to the source of the work. *G. & C. Merriam Co. v. Saalfield,* 198 F. 369, 375 (6th Cir. 1912).

■ When a movie is not in the public domain, a showing of secondary meaning only requires proof that the public associates the movie title with a single source, even if that source is anonymous. *See generally Union Carbide Corp. v. Ever–Ready Inc.,* 531 F.2d 366, 380 (7th Cir.) (secondary meaning is established "if the public is aware that the product comes from a single, though anonymous, source"), *cert. denied,* 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976). As Learned Hand wrote, "The plaintiff succeeds as soon as he shows an audience educated to understand that the title means his [work]." *International Film Serv. Co. v. Associated Producers, Inc.,* 273 F. 585, 587 (S.D.N.Y. 1921).

When the title is of a work that has become part of the public domain, however, the required showing is greater: plaintiff must show "a name which is associated in common thought, not merely with the thing produced, but with the source or origin of production." *Underhill v. Schenck,* 238 N.Y. 7, 143 N.E. 773, 778 (1924). This is, of course, a much greater burden for MPI to meet. As one commentator has pointed out, the greater burden makes sense because there is little likelihood the public will become confused by the title of the public domain work:

> When a public domain work is copied, along with its title, there is little likelihood of confusion when even the most minimal steps are taken to distinguish the publisher of the original from that of the copy. The public is receiving just what it believes it is receiving-the work with which the title has become associated. The public is not only unharmed, it is unconfused.

Leslie A. Kurtz, *Protection for Titles of Literary Works in the Public Domain,* 37 Rutgers L.Rev. 53, 77 (1984).

■ GoodTimes' videocassette is clearly labelled with its name as producer. Because MPI failed to produce any evidence that the public associates the "McLintock" title with a particular source, or to show that GoodTimes' use of the name "McLintock" is likely to cause consumer confusion, the district court properly granted summary judgment on the trademark claim.[8]

### IV

### A

■ MPI argues that the district court should have granted MPI a continuance to pursue additional discovery before the court considered the summary judgment motion. We review for an abuse of discretion the decision to deny additional discovery under Federal Rule of Civil Procedure 56(f). *Qualls v. Blue Cross of California, Inc.,* 22 F.3d 839, 844 (9th Cir.1994).

---

**8.** The only evidence MPI produced to show likelihood of confusion was the deposition testimony of Michael Wayne, who said that he heard (from MPI's CEO and "somebody" else he could not remember) that GoodTimes was representing its video as authorized by Batjac. This testimony is inadmissible, and the district court properly struck it as conclusory. *See Thornhill Publishing Co. v. General Tel. & Electronics Corp.,* 594 F.2d 730, 738 (9th Cir.1979).

■ The district court properly refused to grant MPI's Rule 56(f) motion. Rule 56(f) requires the nonmoving party to show that additional discovery would uncover specific facts which would preclude summary judgment. *Mackey v. Pioneer Nat'l Bank,* 867 F.2d 520, 524 (9th Cir.1989). MPI's counsel listed a number of facts that, even if established, would not have precluded summary judgment for GoodTimes.[9] The district court also properly refused to allow MPI further discovery to search for evidence it thought "may exist."[10] *Blackie v. Barrack,* 524 F.2d 891, 906 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976).

### B

■ The district court properly dismissed MPI's California Civil Code § 980 claim for protection of the "McLintock" soundtrack.[11]

■ State laws within the general scope of federal copyright protection are preempted. 17 U.S.C. § 301(a). Notwithstanding its general preemption provisions, the Copyright Act of 1976 allows state laws to protect "sound recordings fixed before February 15, 1972." 17 U.S.C. § 301(c). The Act defines sound recordings, however, as "not including the sounds accompanying a *motion picture or other audiovisual work.*" 17 U.S.C. § 101. A motion picture soundtrack is protected under the motion picture copyright. *See* 17 U.S.C. § 101 (defining "motion pictures" as "audiovisual works consisting of a series of related images which,

when shown in succession, impart an impression of motion, *together with accompanying sounds,* if any") (emphasis added).

California Civil Code § 980 was adopted after the 1976 revisions to the Copyright Act, in order to conform California law to the new federal law. Section 980's protection of "sound recording[s]," does not apply to motion picture soundtracks. If § 980 purported to protect soundtracks, it would be preempted by federal copyright law.

### C

■ We review for an abuse of discretion the denial of a motion to amend a complaint, *United States v. County of San Diego,* 53 F.3d 965, 969 n. 6 (9th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 183, 133 L.Ed.2d 121 (1995), and the denial of a motion for reconsideration. *Barber v. Hawaii,* 42 F.3d 1185, 1198 (9th Cir.1994).

■ The district court properly denied MPI's motion to file a Third Amended Complaint. Because the court had already found as a matter of law that MPI could not establish ownership to the music, soundtrack or synchronization rights, it correctly refused to allow MPI to amend its complaint to sue for infringement of these rights.

■ The court also properly denied MPI's motion for reconsideration. MPI argues that the court applied the wrong standard in denying the motion for reconsideration. The court stated that it found "no new facts upon which to grant your motion or no new law in this area." This was essentially a

---

**9.** MPI alleged further discovery would uncover: *internal memoranda from UA showing what rights UA believed it had;* depositions from representatives of EMI (UA's successor, GoodTimes' predecessor) establishing that EMI never demanded a royalty from Batjac for Batjac's use of "McLintock," and explaining why EMI did not pay any royalties to Batjac for the sales of GoodTimes' videocassettes; testimony from GoodTimes regarding its negotiations with EMI; information about GoodTimes' "business operations generally"; and information about how GoodTimes "was able to obtain the original technicolor print to which only Batjac is supposed to have access."

**10.** Counsel for MPI requested additional discovery on the following matters: "[D]efendant has

argued that Batjac never received a written license or memo from United Artists transferring any music rights. Batjac contends that it needed no such license, because it never granted those rights related to the motion picture to United Artists. Nevertheless, *such a memorandum or license may* exist"; GoodTimes' "business operations generally and *its possible reputation* as a company that skirts the borders of legality in its business operations." (Emphases added).

**11.** We can affirm the dismissal of a claim on any grounds supported by the record, even if the district court did not rule on those grounds. *American Int'l Enters., Inc. v. FDIC,* 3 F.3d 1263, 1266 (9th Cir.1993).

statement that MPI had presented no new arguments warranting reconsideration, a statement which was not legal error.

## V

We review the district court's decision to grant attorneys' fees under the Copyright Act, and the amount of fees awarded, for an abuse of discretion. *Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.,* 886 F.2d 1545, 1556 (9th Cir.1989), *cert. denied,* 494 U.S. 1017, 110 S.Ct. 1321, 108 L.Ed.2d 496 (1990).

### A

The Copyright Act provides that in civil copyright actions the court may "award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. The same standard applies to both prevailing defendants and plaintiffs. *Fogerty v. Fantasy, Inc.,* — U.S. —, —, 114 S.Ct. 1023, 1033, 127 L.Ed.2d 455 (1994). In deciding whether to award fees under the Copyright Act, the district court should consider, among other things: the degree of success obtained on the claim; frivolousness; motivation; objective reasonableness of factual and legal arguments; and need for compensation and deterrence. *Jackson v. Axton,* 25 F.3d 884, 890 (9th Cir.1994). The district court's fee order stated that MPI's copyright claims were objectively unreasonable, that MPI presented no complex or novel questions of copyright law, and that the evidence supported the "inference" that MPI's suit was instituted to secure a competitive advantage in marketing its videocassette.

MPI argues that the district court's finding of objective unreasonableness was based solely on its determination that MPI's claims could not survive summary judgment. MPI bases its argument on the fee order, in which the court stated that the copyright claims were objectively unreasonable because MPI "did not present evidence of a genuine issue of fact or law in support of the allegations of its complaint." The court did not say, however, that a claim that could not survive summary adjudication was per se objectively unreasonable. The court was within its discretion to find the copyright claims were objectively unreasonable in light of the UA/Batjac contract which gave the music rights to UA, GoodTimes' predecessor.

MPI also claims that the court "rested its finding that MPI's copyright claims involved no complex or novel issues *solely* on the fact that they were summarily dismissed." MPI bases this interpretation on the court's citation to the summary adjudication order to support its finding that there were no complex or novel issues. The court properly found there were no complex or novel issues of law when its summary adjudication was based on contract interpretation. There is no evidence that the court misunderstood the legal standard for granting attorneys' fees. In addition, we find meritless MPI's argument that the nature and amount of GoodTimes' requested fees "belies its contention" that there were no complex or novel issues involved in the litigation. The time spent defending an action is not necessarily related to the complexity of legal issues involved.

MPI asserts that the court made no finding that MPI's motivation was improper, because the court only stated MPI was using the action "to secure a competitive advantage in marketing its version" of "McLintock". Again, MPI is being overly technical in parsing the language of the fee order. The district court cited, inter alia, an MPI memorandum stating that GoodTimes' release of "McLintock" could "be stopped with a threat of a lawsuit, because they wouldn't want the risk." [12] Contrary to MPI's assertion, the documents relied upon by the district court do not demonstrate that MPI was using only "legitimate competitive effort to reach the marketplace before GoodTimes."

---

12. MPI claims the district court should not have considered MPI documents which were attached to the declaration of GoodTimes' attorney, because the attorney could not authenticate them. The district court did not err in considering the documents as indicators of MPI's motivation, however; MPI produced the documents to GoodTimes, many of the documents were on MPI letterhead and MPI does not contest their authenticity.

### B

■ MPI asserts that the district court adopted wholesale GoodTimes' proposed fee application, and failed to "provide a concise but clear explanation of its reasons for the fee award" as required by *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378 (9th Cir.1984), we reversed an award of attorneys' fees and remanded because the district court "accepted uncritically plaintiff's representations concerning the time expended on this case, and it awarded the entire amount requested by plaintiff." *Id.* at 1385. We reviewed the award with "special scrutiny" because the district court had "engaged in the 'regrettable practice' of adopting the findings drafted by the prevailing party wholesale." *Id.* at n. 3. Reversal was warranted in part because the district court's findings were "conclusory and unsupported by any analysis of the time records" and the record did not permit adequate review of the fees awarded. *Id.* at 1385.[13]

Unlike *Sealy* and contrary to MPI's assertion, the district court did not adopt wholesale the facts asserted in GoodTimes' fee petition. GoodTimes requested fees under several statutes, but the district court allowed fees only for the copyright claims, in an amount of $162,175.04. The district court reduced the copyright fee application by the sum of $25,043.49. Because the court did not uncritically adopt all of GoodTimes' requested attorneys' fees, we will not subject the district court's award to "special scrutiny" but will review the award for an abuse of discretion.

■ Although the fee order's analysis of the reasonableness of the time and fees spent is somewhat conclusory, remand is unwarranted. The record is sufficient for us to review the district court's award of fees. The fee order cites the Supplemental Declarations of attorneys Andrew Baum and Helene Freeman, which describe in detail the work done and the percentage of the work allocated to the copyright defense. Together, these declarations summarize the basis for $152,381.57 of the $162,175.04 claimed. The other two awards (of $2,834.50 and $6,958.97) are fees attributable to local counsel, which the district court granted in full. The fee order specifically notes which fees it denied.

MPI states that the district court abused its discretion in: failing to delete excessive billing fees; awarding fees for duplicative services; awarding fees for time unnecessarily spent; failing to exclude "block billed" time; and refusing MPI's request to conduct discovery on GoodTimes' claimed fees. We disagree. Our review of the record shows that the district court properly calculated the amount of GoodTimes' fee award.

### C

Both parties request attorneys' fees on appeal under 17 U.S.C. § 505 of the Copyright Act. *See Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826, 829 (9th Cir.1985) (per curiam). Some of the factors to consider in deciding whether to award fees are: the degree of success obtained on the claim; frivolousness; motivation; objective reasonableness of factual and legal arguments; and need for compensation and deterrence. *Jackson*, 25 F.3d at 890.

■ GoodTimes has obtained total success in defending against MPI's copyright claims. We find that MPI's copyright claims, which are completely contradicted by the language of the Batjac/UA contract are, if not frivolous, at least factually unreasonable. We consider that an award of fees may deter baseless suits. We do not find that MPI's motivation in appealing summary judgment on the copyright claims was motivated by bad faith; nevertheless, all other factors support an award of fees to GoodTimes. We therefore find that GoodTimes is entitled to an award of reasonable attorneys' fees incurred in defending the copyright claims on

---

13. *Sealy* also focused on the district court's failure to examine the factors necessary to determine if rates charged by counsel were reasonable. *Sealy*, 743 F.2d at 1385. On appeal, MPI challenges the reasonableness of the rates charged by GoodTimes' attorneys. Because MPI did not raise this argument below, it is waived. *See International Union of Bricklayers Local 20 v. Martin Jaska, Inc.*, 752 F.2d 1401, 1404 (9th Cir.1985).

891

appeal. The amount of such fees shall be determined by the district court upon remand.

## VI

## CONCLUSION

We AFFIRM the judgment and REMAND for a determination of reasonable fees to be awarded on appeal.

AFFIRMED and REMANDED.